## Shamo v. Benjamin's Administrator, et al.

(Decided October 17, 1913).

### Appeal from Jefferson Circuit Court (Chancery Branch, First Division).

1. Fraudulent Conveyances—Rights of Parties—Suit for Re-conveyance.—Equity will not decree the re-conveyance of real estate conveyed by the grantor to his sister for the purpose of defeating a threatened action by his wife on a claim for alimony.

2. Fraudulent Conveyances—Motive, Fraudulent and Legal—Rights of Parties.—Where the grantor in conveying property to another in secret trust has two motives, one fraudulent and the other legal, equity will not undertake to separate the one from the other and determine which is the controlling factor.

CHARLES P. JOHNSON and McQUOWN & BECKHAM for appellant.

DORSEY & DORSEY, DALLAM, FARNSLEY & MEANS, T. A. McDONALD, JOHN L. WOODBURY and ELMER C. UNDERWOOD for appellees.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

On April 6, 1906, Charles H. Shamo purchased at a decretal sale a piece of property located on Market street in the city of Louisville. He assigned his bid to his sister, Mrs. Eliza J. Benjamin. The purchase price was $3,400, $1,400 of which was paid, and a mortgage executed by Mrs. Benjamin to the Louisville Title Company to secure the balance of $2,000 which was paid on the purchase price. On April 12, 1906, Mrs. Benjamin executed to Shamo a bond for title, in which she declared that she held the property in trust for him, and agreed

to .convey the property to him when her ward, Frances Folsom Shamo, became of age.   About ·the same time Shamo executed to Mrs. Benjamin a note for $3,000, taking from her a receipt to the effect that the note was without consideration, and was executed for a special purpose.   Mrs. Benjamin died intestate on October 4, 1909.   The Commercial Bank & Trust Company qualified as her administrator.

Shamo brought this action on December 5, 1910, to recover the property on Market street.   He alleged in his petition that "owing to obvious and impending troubles he permitted the deed to said property to be made to his sister, Mrs. Eliza J. Benjamin as his trustee, creating· thereby in her a dry trust with the view and for the purpose of obviating those troubles."   He also pleaded that there was no consideration for the execution of· the note for $3,000, and that "nothing of value passed to or from himself or the payee of said note, but it was done simply for the purpose of showing an ostensible indebtedness which in truth and in fact did not exist."   He asked to be adjudged the owner of the property in question, and that the note for $3,000 be canceled.   He further asked that certain named parties be required to answer and set up any claim that they might have to the property, and that his title thereto be quieted.

After the petition was filed the depositions of plaintiff and several witnesses were taken.   In explanation of his petition plaintiff testified as follows:

"The trust created in my sister was merely a dry trust for my protection, as my ex-wife threatened to open up the ·divorce suit and break me up.   There was never any consideration for the creation of it, except her relationship and to protect me."

Other witnesses testified to the same facts.   One of his daughters made it clear that plaintiff executed two notes to Mrs. Benjamin.   One of these was returned to her father, while the other, for which the receipt was executed, was probably lost.   This daughter testifies that the notes were executed for the purpose of showing them to plaintiff's wife.

On February 18, 1911, Albert W. White, a judgment creditor of Mrs. Benjamin, tendered an intervening petition.   On February 21, 1911, plaintiff Shamo filed an amended petition, wherein he attempted to explain his purpose in having the property conveyed to his sister,

Mrs. Benjamin. This explanation, as developed by the amended petition and proof thereafter taken, is as follows:

He and his sister formerly resided in Indiana, where they had an interest in some real estate derived from their deceased father. Plaintiff had two daughters, Mrs. Foster and Mrs. Johnson. He had a life estate in the property and his daughters the remainder. Mrs. Benjamin was appointed guardian of the youngest daughter, Frances, who is now Mrs. Foster. Plaintiff and his wife were separated. The wife filed suit for divorce on September 21, 1904. Plaintiff, by counterclaim, sought a divorce from her, which was granted February 25, 1905. Plaintiff, his children and sister applied to the proper court in Indiana for authority to sell the Indiana real estate for the purpose of re-investment in Louisville. Mrs. Benjamin was appointed commissioner to make the sale privately. While these proceedings in Indiana were pending the Market street property in Louisville was advertised for sale. It was near to or adjoining a house where plaintiff had conducted a shoe shop for a number of years. Mrs. Johnson, his daughter, had received $2,000 insurance money at the death of her husband a short time before. Plaintiff concluded to buy the Market street property, and Mrs. Johnson agreed to lend him part of this money to assist him in paying for it, and also consented that her part of the money derived from the sale of the Indiana real estate might be invested in the same property. When the sale of the Market street property took place Mrs. Johnson and Mrs. Foster accompanied plaintiff to the sale. He bought the property in at $3,400, and paid to the commissioner the $50 deposit required by the court. At that time the plaintiff intended to have the title conveyed to himself, but was informed by Mrs. Johnson that she would not lend the money or sign the Indiana deeds unless the conveyance should be made to Mrs. Benjamin, to hold the property until Mrs. Foster became of age. Mrs. Johnson had heard that her mother, the former wife of plaintiff, had threatened to open the divorce suit, and she was afraid she might lose the money. Mrs. Benjamin also refused to advance the share of her infant word, Mrs. Foster, for the purpose of making a payment on the property, unless the deed should be made to her, saying "I am under bond for this guardianship money. We had better hold it until Frances be-

comes of age. Then if Frances wants to assign her share
to you it is all right." Of the $1,400 paid on the prop-
erty, $1,200 was the interest of Mrs. Foster, and $200
was furnished by plaintiff. The remaining $2,000 was
borrowed from the Louisville Title Company. Plaintiff
claims that the balance was all paid by him, and that he
also paid all taxes, insurance and repairs on the prop-
erty in question. After the death of Mrs. Benjamin
there was found among her papers a deed conveying the
property in question to plaintiff, which she had made
arrangements to execute, but was prevented by her un-
expected demise.

On the final hearing plaintiff was denied the relief
prayed for, and he appeals.

For plaintiff it is insisted that his and his wife's
rights were fixed by the judgment of divorce; that she
had no legal claim against him, and that, therefore, his
act in conveying the property to his sister was in no
sense in fraud of his wife's rights. It is further insisted
that as a matter of fact the consent of Mrs. Benjamin
was necessary in order to enable plaintiff to purchase
the property in question, and that the real and only rea-
son for placing the property in her name was because
Mrs. Benjamin was unwilling to invest the funds which
she held as guardian in the property unless the property
was conveyed to her, and for the same reason plaintiff's
daughter, Mrs. Johnson, was unwilling to advance him
the insurance money. It is, therefore, argued that it was
absolutely necessary to make this kind of an arrange-
ment in order to reinvest the proceeds of the Indiana
property. It must be remembered, however, that plain-
tiff and all of his witnesses, before the creditor White
intervened and set up the fraudulent transaction by
which the title to the property was placed in Mrs. Ben-
jamin, testified in substance that the trust created in
Mrs. Benjamin was merely a dry trust for the protection
of plaintiff against the threatened action of his wife to
open up the divorce suit and break him up. Indeed,
plaintiff says there was never any other consideration
for the creation of the trust except his sister's relation-
ship and his own protection. Not only so, but notes were
executed to his sister to show an ostensible indebtedness
which did not exist. The evidence leaves no doubt that
these notes were executed for the purpose of being
shown to his wife, and to prevent her from taking any
further action in the divorce suit. Later on he changes

his entire cause of action, and bases his right to recover on the contention that the proceeds of the Indiana property were invested in the Louisville property, and that the only way by which he could have the re-investment made and secure from his daughter the necessary funds to pay the balance of the purchase price was to place the title to the property in his sister, Mrs. Benjamin. Notwithstanding the fact that he now insists that this was his main reason for placing the property in his sister's name, he admits that this was done partly because of the threatened action of his wife.* In view of plaintiff's own testimony to the effect that his sole purpose in having the property conveyed to his sister was to protect him from the threat of his wife to open up the divorce suit and break him, and the fact that this testimony was given before the legal effect of such a claim was fully appreciated, and before the validity of the transaction was called in question, we think the chancellor was fully justified in the conclusion that the filing of the amended petition was merely an after-thought to escape the predicament in which plaintiff had placed himself by his original petition and the proof based thereon. But even if this be not true, plaintiff still admits that though he had a legal reason for having the property conveyed to his sister, the conveyance was partly due to the threatened action of his wife. In a case of this kind it is the motive of the grantor that gives character to the transaction, and where he has two motives—one fraudulent and the other legal—equity will not undertake to separate the one from the other and determine which is the controlling factor. It is contrary to public policy that one should undertake to defeat a claim about to be asserted against him through the machinery of the law, by conveying his property in secret trust to another. In such a case the courts will leave the party exactly where he has placed himself. Whether or not plaintiff's wife had a just claim against him is immaterial. Notwithstanding the fact that the divorce had been granted plaintiff, she still had the right of appeal, and this right had not expired at the time of the transaction complained of. On that appeal she might have obtained alimony. Whether or not she would have been successful is beside the case. The transaction involves moral turpitude in the intention with which it is done. The doors of the court are closed to one so offending. As has been frequently said upon this subject, "he who doeth fraud may not borrow

the hand of the chancellor to draw equity from the fountain his own hath polluted." Carson, &c. v. Beliles, 121 Ky., 294; Lankford v. Lankford, 117 S. W., 962; Coleman v. Coleman, 147 Ky., 383.

Judgment affirmed.