## Edleson v. Edleson.

(Decided February 15, 1918.)

Appeal from Jefferson Circuit Court (Chancery Branch, Second Division).

1. Husband and Wife—Contracts Relating to Divorce—Public Policy.—A contract between a husband and wife for the purpose of facilitating the granting of a divorce, to one or the other of them, is contrary to public policy, and is void.

2. Contracts—Covenants—Consideration.—If a consideration for several covenants is a legal one, the covenants, which are legal will

be enforced, although one or more of the covenants is illegal and vicious and will not be enforced.

3. Contracts—Covenants—Consideration.—If the consideration for a covenant is illegal and vicious, or if there be more than one consideration, and one of which is illegal, the covenant is void.

4. Contracts—Construction—Illegal Covenants.—Where a contract consists of several covenants or agreements, and one of the covenants is illegal and vicious, if the illegal covenant can be eliminated without impairing the symmetry of the contract, as a whole, the obnoxious feature will be eliminated, and the remainder enforced, but if the good and bad can not be separated without destroying the general meaning and purpose of the contract, the whole contract will be set aside, as void.

5. Husband and Wife — Contract in Pursuance of Separation. — A contract between husband and wife, in the nature of an adjustment of their property rights, or a provision for the maintenance of the wife, made in contemplation of a continuance of a separation previously made, or in contemplation of an immediate separation, on account of disagreement between them, will be enforced in equity, for the benefit of the wife, if fair and just to her, under the circumstances of the case.

6. Husband and Wife—Contracts Between.—A contract between husband and wife, which would be valid, at law, if made with a trustee for the wife, will be sustained, in equity, though there is no trustee, if it does not affect the rights of other persons.

7. Husband and Wife—Statute—Contracts.—The statute of March 15th, 1894, with reference to the property rights of married women, did not enlarge her powers with reference to contracts between her and her husband, except as provided in the statute.

8. Husband and Wife—Contracts Between.—A contract between husband and wife will be enforced in equity, in favor of the husband, where the husband has executed the covenants upon his part, and the facts and circumstances show clearly, that it would be inequitable not to enforce it for his benefit.

9. Infants—Maintenance of.—The duty of maintaining a minor child rests primarily upon the husband, and he can not relieve himself, forever, from such obligation, by contracting with some other person for its custody and maintenance.

10. Infants—Custody—Contracts.—It is not illegal for parents to contract with each other, that one of them shall have the custody and maintain the child, but, the court will not recognize such contract, unless it is for the best interests of the child, and will recognize it no longer than it is to the interest of the child.

11. Infants—Custody—Contracts.—If a contract between parents for the custody and maintenance of their minor child is such a one, that the chancellor will approve of and recognize, keeping in view the welfare of the child, so long as it is recognized by the court it should be enforced according to its terms, as between the contracting parties.

12. Infants—Custody—Contracts.— When parents contract with each other for the maintenance and custody of their minor child, they

must be considered, as having done so, in contemplation of their legal obligations to the child, and the rights of the child.

CHARLES P. JOHNSON for appellant.

BURWELL K. MARSHALL for appellee.

Opinion of the Court by Judge Hurt—Affirming in part and reversing in part.

The appellant, Samuel A. Edleson, and the appellee, Esther R. Edleson, were married in Louisville on February 19th, 1899, and have since that time continued to reside there. A daughter, Edith H. Edleson, and who is now thirteen years of age, was born to them. On October 23rd, 1914, the appellant was the owner of two houses and the lots upon which they stood, and a parcel of unoccupied land, in the city of Louisville, and was, also, the owner of the business of a shoe merchant, in which he engaged. He was the joint owner with the appellee of a residence situated in Belgravia Court of the value of between six and seven thousand dollars and upon which there was a mortgage lien of over two thousand dollars. The appellee was conducting a business as a milliner, in her name, as the proprietor, connected with the department store of Kaufman-Straus Co. In September, 1914, they became estranged and ceased to live together, as husband and wife. Appellant claimed that he was the owner of the millinery business conducted in the name of the appellee at Kaufman-Straus Co., which the appellee denied. The appellee claimed, that she had paid for the house in Belgravia Court, which was jointly conveyed to her and appellant, and that in addition thereto she had paid the family expenses, including those of appellant, for many years, and had furnished him money of her own, and that he had persistently refused to contribute to her support or that of her child, while, upon the other hand, he claimed, that he had furnished her very large sums of money, which she had spent in extravagence of dress and otherwise, and had paid all that had been paid for the Belgravia Court residence, and all of its contents, and had largely paid for the millinery business, which was conducted in her name.

On the 23rd day of October, 1914, with the assistance and advice of counsel, they entered into a written agreement, which both signed, and it seems to have been

fairly and understandingly made between them, and now, neither makes any claim that the contract was not fairly understood and agreed upon, but each one charges the other with having violated and refused to keep it. The writing contains ten separate articles, and the preamble to it is as follows:

## "AGREEMENT

"This agreement made and entered into this 23rd day of October, 1914, by and between Samuel A. Edleson, party of the first part, and Esther R. Edleson, of Louisville, Ky., party of the second part, witnesseth:

"That whereas said first and second parties are husband and wife and have heretofore ceased to live together and irreconcilable difference having arisen, which renders it impossible for them to hereafter live together as husband and wife, and

"Whereas they have as issue of said marriage a child, named Edith H. Edleson, age twelve years, and,

"Whereas, the said parties have agreed among themselves on a settlement of all property rights and differences, existing between them, and the welfare of the child, and for the purpose of settling all of their differences, and in consideration of the premises, they have entered into the following agreement with each other, to-wit."

It is unnecessary to set out the various articles of the agreement in words, but the substance is to the effect, that the appellee agreed to give up claim to and turn over to the appellant all of the household furniture, which before their separation, was in the house in Belgravia Court, except certain knives and forks and a silver tea set, and such articles as had been made as presents by friends to her. She, further, agreed to pay to him the sum of five hundred dollars, and he agreed within ten days to abandon the house in Belgravia Court and to remove all of his furniture therefrom and to execute a deed of conveyance to Samuel Lipnick, the brother-in-law of the appellee, by which he would convey to him his interest in the property for her benefit, and would deliver to her all letters, telegrams, photographs, and private papers and correspondence, which were in his possession and belonged to her. She agreed to waive all claims, which she then had or would in the future, have against appellant

for alimony or maintenance for herself or for the maintenance of their child, and to sign any deed or other papers, that the appellant requested her to sign, and which would not impose any personal liability upon her, affecting any real estate that he owned, and he agreed to sign any paper, that was necessary for him to sign and upon her request, affecting any real estate, that she then or might thereafter own or in any way affecting her business, provided it did not impose any personal liability upon him. She, also, agreed upon request to surrender any rights that she might have as a beneficiary in a policy of life insurance for two thousand dollars on his life, in the New England Life Insurance Company, and in which she was named as beneficiary, and permit him to choose another beneficiary, and, also, agreed that he might change the beneficiary, in a benefit certificate for one thousand dollars, held by him in the Knights and Ladies of Security and in which she was named as beneficiary, and make the certificate payable to such beneficiary as he might select. She, also, agreed to surrender any right, title or interest that she had as a beneficiary in a policy of insurance for one thousand dollars on the life of her father, Isaac Manitsky, the premiums upon which had been paid by appellant, and to permit him to obtain the cash surrender value of the policy or other benefit of it. They mutually agreed, that these undertakings were a full satisfaction, settlement and compromise of all claims and demands, which either held against the other or against any business in which either might be interested, or which was owned by the other, and in full settlement and satisfaction of any claims that he might have against any person or persons connected with her, and that in the event of the death of either of them before there should be a judgment of divorce, that the one surviving waived all claims to curtesy, dower or distributable share, in either the real or personal estate owned by the other, and that neither of them would interfere with, molest or annoy the other at any time or place. It was further agreed, that she should have the custody, control of, nurture and education of their child, Edith, and that she should bear the expense of the education and maintenance of the child, and that she would not remove her out of the city of Louisville, except on a temporary visit, nor longer than sixty days at any time, and would not do anything to create a lack of affection on the part of the

child toward him. The sixth article of the contract was as follows:

"It is further agreed between the parties hereto that at the expiration of one year from date hereof, that either the first or second party may institute an action for absolute divorce against the other party, on the ground of one year's abandonment, and whichever party institutes said action for divorce, the other party against whom said action is instituted agrees not to make any defense thereto, but it is distinctly understood, however, that in the event either the first or second party institutes such action, that the second party shall pay the costs thereof and attorney's fees, not exceeding, however, the sum of fifty dollars, and shall, also, obtain a divorce according to the Jewish custom."

It seems, that all the undertakings in this contract, with reference to the property rights of the parties, were carried out and executed, except the execution of the necessary writing by appellee to enable the appellant to secure the cash surrender value of the policy of insurance upon the life of Isaac Manitsky, and which is alleged to have been, at the time of the making of the contract, of the value of about two hundred and twenty-six dollars. This part of the contract with reference to the property rights, she refused to perform, and alleges as her reason for it, that the appellant had violated the contract, but in what way she does not suggest. She had the custody of the child at the time of the making of the agreement and continued to have its custody and bore the expenses of its support and education during the year following.

On the 25th day of October, 1915, she instituted this suit against the appellant, in which she sought an absolute divorce from him, upon the ground that without her fault, he had abandoned her, and had, for a period of one year, lived separate and apart from her. This abandonment she alleged took place on October 23rd, 1914, which was the day of the date of the written contract of settlement between them. She alleged, that she was a proper person to have the control and custody of the child, Edith, and asked for an absolute divorce from the appellant and the control and custody of the child, Edith, and, although by the contract, she had agreed to pay the costs of obtaining a divorce, she prayed in her petition to recover her costs against the appellant. On the 4th day of December, after the bringing of her suit, she made a

motion for a rule against appellant, returnable on the 8th day of December, to show cause why he should not pay her seventy-five dollars a month for the support and maintenance of the child, although in accordance with the written contract she had agreed, in consideration of its custody and other considerations, to bear the expenses of its maintenance and education. On the 3rd day of December, she filed an amended petition, in which she set up, as an additional cause of action, the allegation, that the appellant had behaved toward her for not less than six months theretofore in such a cruel and inhuman way, as to indicate a settled aversion toward her, and to destroy permanently her peace and happiness. In this amended petition, she further alleged, that the income of appellant from his businss was two hundred dollars per month, and that he was well able to pay her the sum of seventy-five dollars per month for the maintenance of their child, and in the prayer to this amended petition she prayed for a judgment for her costs, including a reasonable attorney's fee against appellant.

On the 15th day of December, 1915, the appellant filed his answer, which he made a counter-claim, and in this, he denied all the affirmative allegations of the petition and amended petition, and alleged his willingness to resume marital relations with her, and in addition thereto, denied the fitness of the appellee to have the custody of their daughter, and alleged his own fitness for the trust, and asked that the child be confided to him. He, furthermore, set up the contract of October 23rd, 1914, between him and appellee and plead that, as a defense against any requirement of him to pay for the maintenance of the child or for the recovery of any costs against him. He, further, asked, that the court enforce the equitable settlement embraced in the contract and require the appellee to comply with it or otherwise to release him from any compliance with it and to restore to him the property, which had been obtained from him under that settlement, and especially to enforce the provision of it, in which the appellee agreed to take such steps as were necessary to enable him to secure the cash surrender value of the policy upon the life of her father, amounting to two hundred and twenty-six dollars, and he, further, sought to recover the sum of five thousand dollars, which he alleged he had invested for her, in the millinery business conducted in her name, with Kaufman-Straus Co. After-

ward, he filed an amended answer, which he made a counter-claim, and charged that appellee had been guilty of such lewd and lascivious conduct as showed that she was unchaste, and upon that ground asked a divorce *a mensa et thoro*. The affirmative averments in his pleadings were denied. On the 22nd day of December, the court overruled his response to the rule against him, and ordered that he pay her twenty-five dollars per month, for each of two months, for the maintenance of their child, which he paid. After the proof had been taken and filed, the court rendered a judgment, by which a divorce from the bonds of matrimony was granted to the appellee, the custody and control of the child awarded to her, with opportunity for appellant to see her at seasonable times. She was further adjudged to recover of appellant the costs of the action, and the further sum of three hundred dollars, attorney's fees, for the benefit of her attorneys. The judgment contained the further provision:

"It is further considered and adjudged by the court that each party shall restore to the other such property not disposed of at the commencement of this action as either may have obtained directly or indirectly from or through the other during marriage, in consideration or by reason thereof."

The appellant complaining, that the court was in error, when it adjudged him to pay the costs of the action and three hundred dollars in attorney's fees for the benefit of appellee's attorneys, and failing to require the appellee to pay him the cash surrender value of the policy upon the life of Isaac Manitsky, her father, and in requiring him to pay fifty dollars for the maintenance of the child pending the litigation, and has appealed to this court.

(a.) The judgment of the court with reference to the payment of the costs of the suit and the attorney's fees allowed for appellee's attorneys might be very well sustained and rested upon the ground, that both parties ignored that portion of the contract, and each proceeded in absolute violation of it. She violated it, in seeking a judgment for costs, in her original petition and, in her amended petition, by seeking a divorce upon the ground of cruel treatment, maintenance of the child and a judgment for her attorney's fees and costs. He violated it, when he denied, by answer, the grounds of divorce set

up in the original petition and sought a divorce upon the ground, that his wife had been guilty of such lewd behavior as showed her to be unchaste. The costs of the action, including the attorney's fees, was mostly incurred upon the cause of action set up in the amended petition, and in defending against the charge of unwifely conduct made by him in his answer. Of course, it was not contemplated in the making of the contract, that the wife would pay the costs, including attorney's fees, in defending herself against a cause of divorce, other than was stipulated by the contract, should be made, and against taking the custody of the child from her which the contract gave to her. It is very clear, that the parties, at the time of the making of the contract, intended and understood, that the divorce should be sought upon the ground of abandonment, against which no defense would be offered, and it was considered that a fee of fifty dollars for an attorney would be ample in a proceeding of that kind, and was limited to that sum for the benefit of the wife, in the event the husband should bring the suit, as she was undertaking by the contract to pay the costs and attorney's fees. She, however, first violated the terms of the agreement, as above stated, and if the appellant had contented himself, in making his defense, to a reliance upon the contract and had adhered to it himself, there would exist just grounds for complaint upon his part, that he had been required to pay the costs and attorney's fees, if that provision of the contract was a valid one, but the provision of the contract relied upon by him to escape the payment of the costs and attorney's fees labors under a serious difficulty, which is not adverted to by the counsel. It is void and unenforcible, because opposed to sound public policy, and neither party was bound by it, and the knowledge of which fact was, doubtless, the reason that neither party gave any heed to its provisions in the conduct of the litigation, and the reason that the court ignored it. The public policy of this state, as well as that of all others, so far as we know, is to foster, protect and encourage marriage, as it is the foundation of the family relation, without which, an observation of the history of the human family shows, there can be no civilization. The state is interested in the permanency of the marriage relation, and its interest finds expression in the various statutes, which prescribe the grounds for which

divorces may be granted, and the requirement that the county attorney should examine the record of a proceeding for divorce and resist its granting, unless the applicant is entitled to it under the laws of the state, and in the requirement, that the grounds for divorce must be proven, whether there be a defense or not. Hence, a husband and wife can not lawfully enter into a contract for a divorce, and any agreement made by them to facilitate the procurement of a divorce is held to be void and illegal, as contrary to public policy. The contract to facilitate the granting of a divorce is a fraud upon the courts, as they are the only tribunals, which are authorized to dissolve the mariage relation, when it has once been established, and then only upon the grounds and for the reasons provided for by law. An agreement between married people, that one shall bring a suit for divorce and the other fail to defend it, and especially upon a ground, which is not the real one, is a collusion to defraud the courts. Johnson v. Johnson, 122 Ky. 13; 90 S. W. 964; 6 R. C. L. 772; 9 R. C. L. 254. Hence, the provisions of the contract did not constitute any defense against the requirement of the statute, which provides that in actions for divorce and alimony the husband shall pay the cost of each party, unless it appears that the wife is in fault and has ample estate to pay the costs. Section 900, Kentucky Statutes; Schneider v. Schneider, 23 R. 1154; Turner v. Turner, 23 R. 370; McMakin v. McMakin, 27 R. 1211, and many others.

(b) The provision in the contract, relating to the procurement of the divorce and the payment of the costs of same being void, as opposed to public policy, a serious question then arises as to whether or not such provision being vicious, it poisons all the provisions of the agreement and renders them unenforcible. It is evident, that the general meaning and purpose of the contract, taken as a whole, was to make a settlement and adjustment of their respective property rights, and the custody of their child, in contemplation of their continued separation, and such purpose is expressed in the preamble as the consideration for the various undertakings and covenants in the contract, all of which were legal, except the one heretofore held void. It is an old principle of the common law, that if the consideration for two or more undertakings is legal, and one of the promises is legal and the other illegal, the illegal one will not be enforced, but the legal one will be enforced; but if any part of the consideration

for a promise is vicious and illegal, the promise will not be enforced. Hence, if the provision relating to the procurement of the divorce constitutes any part of the consideration for any other covenant in the contract, such covenant will, also, be void. Newport Rolling Mills Co. v. Hall, 147 Ky. 598; Brown v. Langford, 3 Bibb 497; Stratton v. Wilson, 170 Ky. 61; Johnson v. McMillion, 178 Ky. 707. If a promise has several considerations, and one of them is illegal, it renders the promise void, McLane v. Dixon, 30 R. 683; Swan v. Chandler, 8 B. M. 97; Collins v. Merrell, 2 Met. 163. Where a contract, however, consists of several covenants and agreements with regard to different subjects, and one of the covenants is illegal and vicious, the general rule which prevails is, that if the illegal covenant of the contract can be eliminated from it without impairing its symmetry as a whole the courts will adopt that view and eliminate the obnoxious feature and enforce the remainder of the contract, and as was said in Newport Rolling Mills Co. v. Hall, *supra*:

"But, if the good and bad are so interwoven that they can not be separated without altering or destroying the general meaning and purpose of the contract, the good must go with the bad, and the whole contract be set aside."

It can not be said, that the vicious provision, in the contract, in question, constitutes any consideration for any other provision of that contract, as all the other provisions relate to a settlement and adjustment of their property rights and the custody of the child, and consist of covenants to do certain things with regard to their property and child, and mutual concessions and waivers upon each side. The vicious provision seems to carry within it, its own consideration and has no special reference to the consideration for any other provision of the contract. Its elimination will not impair the contract, as a whole, or in anywise affect any other provision of it, and hence might be properly considered an independent covenant carrying with it the relief for its breach independently of the performance or non-performance of any other covenant in the contract. Hence, we are disposed to hold that this provision is severable from the remainder of the contract and may be eliminated, because void, and the remainder of the contract be held valid and enforcible.

(c). The contract, in question with its obnoxious feature eliminated, was one between husband and wife

and not enforcible, according to the common law. Simpson v. Simpson, 4 Dana 140. It has, however, long since been thoroughly established, as an equitable doctrine, that a contract between husband and wife made in contemplation of the continuance of a previous separation or in contemplation of immediate separation, where disagreements have arisen between them, and the contract has for its purpose an adjustment of their respective property rights, and the making of a provision for the support of the wife, will be enforced, in equity, if fairly made and just, or in other words, it is such provision as the court would have made for the wife under the circumstances of the case. A good while, ago, it was required to make such a contract enforcible in equity that a trustee for the wife should be created and the contract made with him for the benefit of the wife. Since then, however, the doctrine has been established, that where a contract has been made between husband and wife, which would have been good, at law, if it had been made with a trustee for the wife, will be sustained in equity, though there was no trustee, if it does not affect the rights of third persons. One or more of the cases here cited, will be found to support each of the views above expressed. Gaines' Admrx. v. Poore, 3 Met. 507; Evans v. Evans, 93 Ky. 510; Loud v. Loud, 4 Bush 453; Hendricks v. Hendricks, 4 R. 724; Hite v. Hite, 126 Ky. 529; Sidens v. Sidens, 31 R. 66; Woodruff v. Woodruff, 121 Ky. 784; Rash v. Hart, 28 R. 264; Word v. Crotty, 4 Met. 59; Bohannon v. Bohannon, 29 R. 143; Moayan v. Moayan, 114 Ky. 855; Maraman v. Maraman, 4 Met. 87; Dance v. Dance, 6 R. 740; Stroud v. Ross, et al., 118 Ky. 630; Bohannon v. Travis, et al. 94 Ky. 59. Before the act of March 15, 1894, regarding the property rights of married women and their powers to contract was enacted, it was held in Bohannon v. Travis, et al., *supra,* that a contract between the husband and wife would not be enforced, in equity, unless it was "fair and just, founded upon a valuable consideration, and reasonably certain as to its stipulations and the circumstances under which it was made," and in Stroud v. Ross, et al., *supra,* since the enactment of the statute of March 15, 1894, it was held that such act did not enlarge the powers of a married woman, with reference to contracting with her husband. In the case of Bohannon v. Travis, et al., *supra,* however, the contract was not one for a settlement or adjustment of prop-

erty rights in contemplation of a previous separation or of an immediate separation of the parties. Nearly all of the contracts between husband and wife, which have been enforced in this jurisdiction, have been enforced in favor of the wife, but in other jurisdictions and occasionally, in this, such agreements have been enforced in favor of the husband, when the facts and circumstances clearly showed, that it was equitable, that it should be done. Stroud v. Ross, et al., *supra*. Such was done in the case of Stroud v. Ross, et al., *supra,* and the doctrine that a contract between husband and wife, with regard to their property rights might be enforced, if the circumstances and facts warranted it, for the benefit of the husband, was referred to in the case of Bohannon v. Travis, et al., *supra,* and there substantially approved, with a reference, with approval, to the cases of Livingston v. Livingston, 2 Johns, Ch. 537; Moore v. Freeman, Bumb. 205; Hendricks v. Isaacs, 117 N. Y. 411; Haussman v. Burnham, 59 Conn. 107, wherein the same doctrine was upheld. The contract, in the present instance, was one made in contemplation of the continuance of a separation, which had already occurred, or in contemplation of an immediate permanent separation, and its purpose was to definitely settle and adjust between the parties their property rights. It was made by the appellee with the assistance of counsel and there is no pretense that it was not fairly made or fairly understood, and the appellee does not yet complain of any injustice done to her by the terms of the contract. It has been executed by the appellant by performing the undertakings in the contract, which he undertook to perform, with reference to all legal provisions by the contract, and the conveyance of the property as there covenanted, and a release of all claims that he had, in compliance with the contract. It seems, that it would be inequitable, after, he having executed the contract, wherein a settlement, such as was fair and just to the appellee, was made, that it should not be complied with by the appellee, on her part, with reference to the covenants of the contract, which were legal, and hence, we are of the opinion that the court was in error in failing to require the appellee to perform the covenant in the contract, which required her to execute the necessary writings to enable him to receive the cash surrender value

of the policy upon the life of Isaac Manitsky, he having paid all the premiums upon the policy, or else to require her to account to him for the amount of the cash surrender value of the policy, at the time the contract was entered into.

(d)   With reference to the complaint of appellant, that in view of the contract, he should not have been required to pay fifty dollars, for the maintenance of the child, pending the litigation, it is evident that a husband and wife, with each other, can not make a contract regarding the maintenance or custody of their child, which the court is compelled to enforce, nor can the husband relieve himself of his primary liability to maintain his child by entering into a contract with some one else to do so and thus, forever, relieve himself from such liability, as between him and the child. The chancellor, in fixing the custody of a minor child, will keep in view, primarily, the welfare of the child, and in case of a separation of father and mother will confide its custody to the parent, who is most suitable to the trust, if either, as the right of each to its custody is of equal dignity. It is, however, not illegal for the parents, who have separated to enter into a contract with each other for the custody and maintenance of their child, but the court will not recognize such contract, unless it is one, which insures the proper care and maintenance of the child. If the contract is such a one, as the court would approve, keeping the welfare of the child in view, it may recognize the contract, but such contract will not be enforced longer than it appears to be for the best interests of the child, and parents entering into such a contract are presumed to do so in contemplation of their obligations under the law and the rights of the child. So long, however, as the court recognizes the contract, which has been entered into between the parents, its provisions should be enforced. The court, however, may confide the custody of the child to the mother and require the father to contribute to its maintenance, if their respective suitability for its custody and financial circumstances render such a disposition necessary to the proper care of the child. Where, as in the instant case, a contract, supported by a sufficient consideration, has been entered into between the parents for the custody and maintenance of the child, and the mother, under the contract is to have custody and maintain it, and has a

financial ability to properly do so, and the contract is thus fair and just to her, and the custody is such that the court will and does approve of it, she should be required to comply with the contract, as between her and the father, especially where it appears that the father has made a settlement, in the way of property, sufficient to enable the mother to maintain the child in a proper way. The court seems to have recognized the contract in its final judgment, by confiding the custody of the child to the mother, without any requirement that the father should contribute to its maintenance. The evidence heard upon the motion for the allowance for the maintenance of the child during the pendency of the suit is not before us, nor were the pleadings upon the motion sufficient to apprise us of what were the issues, nor the particular reason which moved the court, and hence we can not assume that the court was in error in its determination to require a contribution from the husband, temporarily.

It is therefore ordered that the judgment be affirmed as to requiring the appellant to pay the costs of the litigation, including the attorney's fees, and the fifty dollars allowance for the maintenance of the child pending the litigation, but the judgment is reversed, because of the failure of the court to require appellee to carry out her contract with reference to the surrender value of the policy of insurance upon the life of Isaac Manitsky, of which he was the beneficiary, or to reimburse the appellant to the extent of the cash surrender value, at the time of the making of the contract, and the action is remanded for proceedings consistent with this opinion.