## Jagoe v. Jagoe.

(Decided December 6, 1921.)

### Appeal from Hopkins Circuit Court.

1. Divorce—Restoration of Property.—Notwithstanding the statutory provisions requiring the property rights of parties upon the granting of a divorce to be restored, such restoration will not be en-

forced if the party has during the marriage relation conveyed the property to his or her husband or wife for fraudulent or immoral purposes.

2.  Fraud—Instruments of.—Courts will not permit themselves to be made the instruments by which fraudulent schemes are carried out.

3.  Divorce—Restoration of Property.—In a divorce action the evidence by both the husband and the wife is incompetent insofar as it affects their property rights; and the recitals in the second deed in question being the only reliable evidence its purpose plainly was to place in the wife the title to the property therein conveyed because the husband had theretofore invested the wife's property inherited from her father therein and taken title to himself.

COX & GRAYOT for appellant.

YOST & FRANKLIN for appellee.

OPINION OF THE COURT BY TURNER, COMMISSIONER—Affirming.

The appellant and the appellee were married in the year 1879, and in September, 1919, appellee filed this action for a divorce in the Hopkins circuit court alleging in substance that the parties had lived separate and apart continuously without cohabitation for more than five consecutive years theretofore, and that for more than six months prior to the separation the defendant behaved toward her in such a cruel and inhuman manner as to indicate a settled aversion toward her and to destroy permanently her peace and happiness.

The defendant answered denying cruel and inhuman treatment, and setting up by way of counterclaim that the plaintiff for more than five years next before that date and without any fault upon his part had remained separate and apart from him without any reason or excuse therefor, and without any fault upon his part had abandoned, quit and remained separate and apart from him.

He further pleaded by way of counterclaim that during the existence of the marriage relation between them and while they were living happily together as husband and wife plaintiff had obtained from him in consideration of and by reason of their marriage much valuable property conveyed to her by him without valuable consideration, and alleging specifically that on the 11th of May, 1889, he conveyed to her certain lots or parcels of land

because and only because of such relationship, and prayed that there be restored to him the property so conveyed.

He also alleges that in February, 1897, while they were living together as husband and wife and by reason of that fact he conveyed to her certain tracts of land because of their said relationship, and praying that if an absolute divorce was granted to the plaintiff that proper orders be entered restoring to him all the property so conveyed.

By reply the plaintiff alleged affirmatively that the conveyance of the property in the year 1889 was made by the defendant to her solely for the purpose of cheating, hindering and delaying his creditors; and that the property so conveyed to her in the year 1897 was made for a full, fair and adequate consideration.

By reply the issues were made and thereafter the proof was taken.

Upon a submission the trial court adjudged the plaintiff an absolute divorce and denied the defendant any relief whatsoever on his counterclaim and from that judgment he has appealed.

In recognition of the universal rule it is conceded by both parties that this court has no jurisdiction to reverse the judgment of divorce, but the appeal only involves the correctness of the judgment below as to the property rights of the parties.

As to the first conveyance by appellant to his wife in the year 1889, it is shown by the competent evidence of two witnesses, one of them being the daughter of the parties, that a year or so before that conveyance appellant had sold and warranted a jack and that during the year 1889 the purchaser of that jack had complained to him that the animal had not and did not come up to the warranty and called upon him to either take the animal back and refund his money or account to him in damages. That appellant did not desire to take the animal back or account to the purchaser, and with a view of avoiding any liability that might grow out of that transaction he conveyed the property embraced in that deed to his wife with the sole and only purpose of avoiding that liability.

The evidence of his daughter is that while she at the time of that transaction was not born, she had thereafter heard her father say that the man to whom he had sold the jack had threatened to sue him and he deeded this property to her mother to avoid any liability by reason of his warranty of the jack, and she states in detail the circumstances under which the father made this state-

ment growing out of a separate and distinct transaction years thereafter which reminded him of the previous deal.

In addition to this evidence of the daughter it is in evidence by a friend of appellant that after the differences had arisen between him and his wife the friend inquired of him what made him deed all of this property to his wife, and appellant replied that at the time he and his wife were getting along fine and he thought she could attend to the business as well as he could, and as he had sold a very fine jack that had gone wrong and as he did not want to take back the jack he had conveyed his property to his wife for the purpose of evading that liability.

It has long been a rule of equity in divorce actions that notwithstanding the statutory provisions requiring that the property rights of the parties upon the granting of a divorce should be restored, such restoration could not and would not be enforced if the party had, during the marriage relation, conveyed the property to his or her husband or wife for fraudulent or immoral purposes.

Under the evidence in this case it is reasonably clear —and the chancellor below has so held—that the defendant in order to avoid his liability on a warranty of the jack had, during the marriage relation, conveyed his property to his wife; and it is the policy of the law that where one for unlawful or immoral purposes has placed the title to his property in another the courts will not at his instance or suggestion relieve him from the situation in which he has placed himself by reason of his immoral or unlawful purpose. The evidence in this case justifies the conclusion that defendant placed the title to this property in his wife for the purpose of avoiding a liability on his warranty, and he now comes into court and asks a chancellor to restore to him the title to the property which he thus voluntarily parted with for an immoral and unconscionable purpose.

To permit the courts to thus be made tools for the perpetration of such frauds would bring into disrepute the whole administration of justice. They are not constructed for the purpose of aiding unconscionable persons to consummate the frauds which they may concoct; on the contrary, it is the rule that courts will not permit themselves to be made the instruments by which such fraudulent schemes are carried out.

As said in Shamo v. Benjamin's Administrator, 155 Ky. 377:

"It is contrary to public policy that one should undertake to defeat a claim about to be asserted against him through the machinery of the law, by conveying his property in secret trust to another."

And in the same case the familiar quotation is referred to that,

"He who doeth fraud may not borrow the hand of the chancellor to draw equity from the fountain his own hath polluted."

Shamo v. Benjamin's Administrator, 155 Ky. 373; Lankford v. Lankford, 117 S. W. 962; Carson v. Beliles, 121 Ky. 294; Coleman v. Coleman, 147 Ky. 383; Bean v. Bean, 164 Ky. 810.

The remaining question is whether the deed of February, 1897, was made, executed and delivered by the husband to the wife for a full, complete and adequate consideration.

We find on the face of that instrument it is recited that whereas the appellee had inherited from her father a tract of land in Hopkins county which had been sold to one Morton for the sum of five thousand dollars, and that whereas the husband and wife had reinvested that sum and other estate received by the appellee from her father's estate, the title to which properties had been taken to the party of the first part (appellant) with the expectation and intention that the same should inure to the benefit of his wife, in consideration of these facts and one dollar in hand paid to him he conveyed to the appellee the tracts of land therein designated.

The evidence of the husband and the wife is unmistakably incompetent insofar as either of them undertakes to testify about their property rights, or what had occurred between them during their marriage with reference thereto; and therefore the recitals in the deed to which we have referred are the only competent and reliable evidence which we have with reference to the purposes of that instrument. Accepting as we do the recitals in that deed as the only reliable evidence indicating the purpose of its execution there can be no doubt that its purpose was to place in the wife the title of such property as had theretofore been placed in the husband by reason of the investment of the wife's property inherited from her father, or its proceeds.

The fact that the combined cost of these several pieces of property so conveyed to the wife was a few hundred

dollars more than the selling price of the property which she inherited from her father will not be permitted to defeat the plain purpose of the parties at the time. For the evidence shows that the husband had the use of the wife's real estate for several years before it was sold, and had the use of the money for which it was sold for some time before the reinvestment.

The chancellor's judgment is in accord with the equities of the case and it is therefore affirmed.