# Murphy v. Murphy et al.

June 8, 1948.

Rehearing denied October 15, 1948.

E. P. Mengel and Tilford & Wetherby for appellant.

Hayse & Hayse and Niles & Will for appellees.

OPINION OF THE COURT BY JUDGE SILER—Affirming.

William T. Murphy, appellant, sued Gladys K. Murphy, appellee, his former wife, for a restoration of a half interest, or its equivalent, in certain real estate, the title to which had formerly been vested in both of them jointly. The chancellor having dismissed the petition of Murphy, the latter appeals.

Portland Federal Savings and Loan association, a mortgagee of this same real estate, is only a nominal appellee and is disinterested, except as to protection of its own financial interest, in the final outcome of this case.

Murphy contends that the formal transfer of this real estate from himself to Mrs. Murphy, which occurred 19 days before their divorce action, was without any

consideration; that accordingly judgment should have been rendered in his favor in the present suit for a half interest, or its equivalent, in the controversial property; that the chancellor's judgment in favor of Mrs. Murphy, rendered on recommendation of the trial commissioner after a hearing of all of Murphy's own witnesses and also Mrs. Murphy herself as if on cross-examination, must be reversed because there was no evidence to support an adjudication to the effect that the transfer in question was based on adequate consideration.

This property was bought in 1943 with the joint funds of both these parties and was placed in their joint names after arrangements had been completed for satisfactory financing of the unpaid balance of purchase price. Both parties thereafter contributed to monthly payments on the unpaid balance maturing under the finance plan. But on January 25, 1946, after Mrs. Murphy had "made threats" of a divorce suit, the title to this property was, with apparent satisfaction to all concerned, voluntarily transferred to Mrs. Murphy's individual name. On that same day, Murphy left his Louisville employment and also Mrs. Murphy and went off to Detroit where he began employment with Chrysler Corporation. On February 13, 1946, she began suit for divorce. On March 2, 1946, Murphy, writing from Detroit to the warning order attorney appointed in the divorce suit for notification purpose, said "push the suit" and also said he had "nothing to fight for" in the case. On June 24, 1946, a divorce judgment, which also provided for general restoration of property not disposed of at the beginning of the divorce action, was granted in Mrs. Murphy's uncontested case. On July 19, 1946, he married another. On September 20, 1946, she did the same. On October 22, 1946, the present restoration suit was filed.

Mrs. Murphy tells us that Murphy had become infatuated with another woman at the time of the property transfer and that accordingly such transfer was purely a separation settlement, looking toward the separation which began that very day and then culminated in divorce action 19 days later. She particularly points out Murphy's own admission on cross-examination to the effect that he was then "corresponding with her (the other woman) on the bus—talking to her on the bus"

at the time of this transfer. And Mrs. Murphy also points out Murphy's admitted departure for Detroit on the day of the transfer. And she also points out his letter to the warning order attorney saying he had "nothing to fight for" in the divorce action. These elements furnished ample evidence, Mrs. Murphy says, to support the chancellor's finding that the transfer was based on an adequate consideration, viz., that of a mutual agreement of separation immediately preceding the separation itself.

It is certainly true that we have held that a separation agreement made in contemplation of a separation or made after a separation is a valid agreement if it is fair on its face. See Middleton v. Middleton, 207 Ky. 508, 269 S. W. 552; Hoskins v. Hoskins, 201 Ky. 208, 256 S. W. 1; Edleson v. Edleson, 179 Ky. 300, 200 S. W. 625, 2 A. L. R. 689. In recognizing the validity of such agreements, we have undoubtedly considered that the mutual desire of the parties for their future celibacy constitutes a valid consideration for a contract of that kind. We can readily understand that it might be a cheap price, in some instances though not necessarily so in this particular one, for one spouse to give up a half interest in the great Cullinan diamond rather than to endure life with a hellicat spouse across the breakfast table. There should not be such a thing as a hellicat spouse, and married cohabitation should be both enjoyable and enduring. But where a hellicat spouse arises in the family circle, then two roofs may be better than one. And so, it appears that any separation settlement based on a desire for separate existence is always supported by sound consideration. The chancellor had, in this case we believe, sufficient evidence to justify his finding that this was a separation settlement.

Murphy himself tells us that this was not a separation settlement. He explains the property transfer in this manner:

"I told her I was going to leave so she asked me to sign this place over to her in case something happened to me. If I got in an accident or trouble the law could not take it away from both of us."

Our interpretation of Murphy's explanation is that this transfer was made to circumvent the possibilities

of the law in the event of some unforeseen misfortune. If our interpretation, based upon Murphy's explanation as quoted above, is a correct one, then his restoration claim in a court of equity is too weak to generate a judgment in his favor. Where property has been conveyed for the agreed purpose of avoiding future legal liabilities, the chancellor is justified in leaving the parties right where he has found them. See Bean v. Bean, 164 Ky. 810, 176 S. W. 181; Jagoe v. Jagoe, 194 Ky. 101, 238 S. W. 185.

And so, on the basis of Mrs. Murphy's theory of the case, viz., that this property transfer was in reality a separation agreement, or on the basis of Murphy's theory of the case, viz., that such transfer was made to guard against legal possibilities in the event of an accident, it would seem that the chancellor was correct in leaving this transfer of January 25, 1946, voluntarily made and entered by these parties with all four eyes open, right in the very spot where the contract was found.

The judgment is affirmed.