Claude WILLIAMS, Appellant,

v.

Iva Arnett WILLIAMS, Appellee.

Court of Appeals of Kentucky.

Sept. 23, 1960.

Earl R. Cooper, Salyersville, for appellant.

Mann & Mann, Salyersville, for appellee.

MOREMEN, Judge.

Appellee, Iva Arnett Williams, was granted a divorce from Claude Williams

by the Magoffin Circuit Court. She was awarded custody of two infant children and maintenance for each one in the sum of $25 per month. As alimony, she was given the household effects and an automobile, in addition to a cash award of $2,500. That part of the judgment which deals with the cash award reads:

"It is adjudged and ordered that the plaintiff, Iva Arnett Williams, deed to Claude Williams the home in Salyersville, Ky., on the Old Burning Fork Road absolutely, and the defendant, Claude Williams is to pay to Iva Arnett Williams the sum of $2,500.00 cash and this within ——— months the same being considered and adjudged by this Court a reasonable time in which to do so and provide further that the $2,500.00 to be paid by the defendant to the plaintiff drawing interest from the date of judgment until paid."

On this appeal it is contended that the custody of the infant children should have been awarded to appellant and that all real estate and other property should have been restored to him.

 The record disclosed that neither party to this marriage was of high moral character. The husband was convicted of manslaughter and served a prison sentence of five years. During the period of his confinement, his wife illegally sold intoxicating liquors and engaged in other illicit activities. It is indicated that both parties drank to excess. However the testimony given by three teachers of the children established the fact that appellee sent them to school regularly, that they were clean, well behaved, normal children and that the mother had exerted every effort to give them proper training and education. We think under the circumstances shown, the chancellor was correct in awarding the children to her. In such matters he has wide discretion. Price v. Price, 306 Ky. 214, 206 S.W.2d 924.

It will be noted from the above quoted portion of the judgment that the chancellor did restore to appellant the home, the title to which was in appellee. The argument in the appellant's brief seems to be based on the premise that no restoration had been ordered. A justification of the chancellor's action may be found in the fact proven.

At the time of the marriage neither party had any property of material value, but afterwards appellant's mother conveyed to him a small tract of land near Salyersville.

In 1942, appellant was called into the service and was not discharged until 1945. During this period his wife received an allotment with which to support herself and her two sons. While appellant was in the service she worked in a restaurant and in an ordnance plant. When he came out of the army, appellee had accumulated about $1,900. After he was discharged from the service he received as unemployment benefits the sum of $1,040 in weekly payments. He also received compensation for injuries suffered in the service in the sum of $100 per month. From 1947 to 1951, he was employed as a policeman in Salyersville for which he received $125 per month. This was later raised to $150 per month.

In about 1948, appellant built a dwelling and barn on the property given to him by his mother and he testified that the money for construction was that which he had earned and had received as benefits. It may be noted, however, that the money received by him was paid in installments at a time when he was supporting, with the assistance of his wife, a family. Although it is entirely possible that he could have saved the money necessary to build a house, the evidence seems clear that the lump cash amount that really got the construction under way was provided by the savings of his wife.

He testified:

"Q. Who built that house out there?
A. Vester Patrick and Carl Adams.

"Q. Who paid for it? A. I drawed that $1,000.00 when I first come out of the army and I worked on the police force and she had $2,500.00. It was spent for furniture and some was spent on the house."

Later this property was sold and title to other property was taken in the name of both parties jointly. They then sold the property and re-purchased the first home for $7,500. Title to this property was taken in the wife's name alone. There is proof that this action resulted from the fact that about, or prior to this time, a car which appellant owned and was driving had a collision with one driven by Arthur Whitaker (Williams v. Whitaker, Ky., 293 S.W.2d 627, 64 A.L.R.2d 504) and titles to the car and real estate were transferred for the purpose of evading a possible judgment which might have obtained against him. If such were the case, the chancellor would have been well within his discretion to deny to appellant any recovery of the real property because in Jagoe v. Jagoe, 194 Ky. 101, 238 S.W. 185, 186, it is said:

"It has long been a rule of equity in divorce actions that, notwithstanding the statutory provisions requiring that the property rights of the parties upon the granting of a divorce should be restored, such restoration could not and would not be enforced if the party had during the marriage relation conveyed the property to his or her husband or wife for fraudulent or immoral purposes."

The court, however, did not penalize appellant on this account, but instead ordered the real property reconveyed and at the same time secured to appellee the sum which she had contributed to the building of the home. It seems to us that it matters little whether the award of $2,500 was in restoration or was an outright allotment of that sum as alimony. In either event, he did equity by restoring the real estate to appellant upon condition that he pay appellee the sum of $2,500. We think the disposition of the property was had in a fair and equitable manner.

The judgment is therefore affirmed.