Judge Marshall
delivered the Opinion of the Court.
Jesse Simpson and Jane his wife, being mutually dissatisñed, and determined to separate, entered' into a written article, by which they undertook to release each other from the obligations imposed by their marriage; and, by the same writing, the husband gave and conveyed to his wife, certain specified articles of property, amdng which was one negro girl. He also, about the same time, executed to her a note for thirty dollars. They accordingly separated, and the wife leaving her husband’s house, took with her the property given to her, and a child born during their cohabitation.
Some months after this separation, the husband took the negro girl from the possession of his wife, and at a subsequent period, sold her for three hundred and fifty dollars, and- he has hitherto failed to pay the thirty dollars due on his note.
In consequence of these violations of the arrangement, Jane Simpson, the wife, filed the present bill against him. She alleges the foregoing facts, together with some general statements as to the causes of separation, and, in effect, prays compensation for her husband’s breach of the articles, and a reasonable sum for the support of the child, then eight years old, and for general relief.
The defendant, in his answer, admits the execution of the alleged contract, and his violation of‘it, as charged; but denies that it has any obligatory force. He also admits the birth of tire child during cohabitation, but depics that it is his, or that he is bound to support it.
There being no evidence or exhibit, except the articles of separation, the Court, on final hearing, dismissed the *141 bill; and Jane Simpson asks a reversal of the decree by this Court.
Contracts between husband and wife are contrary to tlie policy of the law, null and void.
A valid agreement for a seperation, between husband & wife, and for a seperate allowance for her support, may be made thro, the medium of a. 3.4 party, (astrustee, for the wife) by & against whom the contract may he enforced. But where there is no, third party, no;, suit upon such a, contract— either-at law, or in equity, can be maintained, either for specific performance or dam ages.
The causes and grounds upon which courts of" equity may dissolve the marriage contract, en lively or partially, are defined by statute and well established principles,— beyond’ which the courts, will not mere, voluntary agreements of separation, they will extend no countenance,.
The case discloses no ground for a divorce, or for alimony, under the statutes of this country. And the single question presented, is whether, while the marriage contract remains unaffected by any judicial or legislative proceeding, a wife can obtain relief against her husband, by suit in Chancery, founded upon articles of separation executed between themselves alone—which suit has for its essential object, the enforcement of the articles, or a compensation for their breach. We are of opinion she cannot.
By the common law, husband and wife are entirely incapable of contracting directly with each other. A contract, or pretended contract, between them, would be considered, at law, as a nullity; its breach would furnish no ground for the recovery of damages on either side; and to enforce such a contract in Chancery, or to. decree damages for its violation, would seem to be contrary to all the general rules by which the jurisdiction and proceedings of a Court of equity are determined. Besides, as a general rule, the wife cannot, even in Chancery, maintain a suit in her own name; and if she must sue in that way because her husband is to be the defendant, it is at least necessary, before such an anomaly is allowed, that her right to come into the Court, and the power of the Chancellor to grant the relief prayed for, should be satisfactorily established, upon principle and authority. The current of authority is, in our opinion, against the jurisdiction. The case of Guth vs. Guth (3 Brown, 614) in which the jurisdiction was asserted, seems not to have been followed, but has been disapproved in some of the cases which have been since decided. Legard vs. Johnson, 3 Vesey 361; Wilkes vs. Wilkes, 2 Dick. 791; Maddock's Chy., 385—388; and Newland on Contracts, 115—119.
The principle involved is, however, of deeper consequence than the mere adherence to the doctrine of the common law in relation to the disability of the husband *142 ' and wife to contract with each other. The disability is itself founded in the wisest policy, and is .an essential muniment to the inviolability of the nuptial contract, and to the maintenance of the institution of marriage. The well-being of society, as well as the policy of the law and the objects and duties of the marital contract require, that those who are united in marriage should live together. The law, indeed, furnishes, and can furttish, no coercive remedy for enforcing this duty. But, in addition to the inducements which are held out by the laws of nature and the customs of society, in this very disability to contract with each other, in the utter incapacity, by their own mere will, to absolve each other from the reciprocal rights and duties which the law of their contract has imposed upon them, in the consequent dependence of the wife upon the husband, and the continued liability of the husband to support the wife, the law furnishes powerful motives, which operate most strongly upon those who might be least moved by other considerations, to the promotion of harmony and peaceful cohabitation in married life. To withdraw or diminish the force of these and other similar motives, by which reasonable people united in matrimony may be impelled by mutual forbearance and moderation, to render themselves comfortable in a condition which they cannot change at will, is doubtless within the competency of the legislative power, acting through the medium of general laws. The judiciary, as we are inclined to think, has no power to move one step in advance of the legislation on the subject. It is at least restricted to that point at which its jurisdiction, having been maintained by uniform judicial precedents, may be presumed to have the sanction of legislative, as well as general, acquiescence. The legislature of this State has, in the several acts on the subject of divorce and alimony, defined the circumstances under which the marriage contract, with its legal incidents, may, through the agency of a Court of Equity, bo wholly or partially dissolved. But if voluntary articles of separation, such as are exhibited in the present case, are to be recognized and enforced as valid contracts, in a Court of Chancery, it cer *143 lainly would be adding, by judicial authority, another, and an almost illimitable ground for partial divorce, which •would greatly weaken the sanctions by winch the institution of marriage is upheld, and would place it upon a foundation essentially different from that which the laws of the land have established. Obviously, the Court cannot enforce the articles merely because they are in the form of a contract, or it must enforce every agreement of that sort, which comes before it; and it cannot enforce them on the ground that the parties ought not to remain subject to the duty of cohabitation and other marital duties, because no sufficient cause under the statute,fora total or partial release from those duties, is shewn to exist.
a man ;s bound to.„s«PPo*t his wife an<3 children; and whoro atíon and heláis to furnish what is necessary and proper for them, , , ,, , _ and others do it, they may compel him to pay for it: but the wife cannot sue him, in her own name, either for her own, or the children’s, support.
Without further reference, therefore, to the particular merits of this case, we are of opinion that, on the general grounds of the invalidity of the contract, the want of power in the Court, and the dangerous consequences which might ensue from granting relief in such cases, the complainant’s bill was properly dismissed. We are aware, that many cases have occurred, in which a Court of Equity has decreed a separate maintenance to the wife, upon articles of separation in which a trustee has intervened; and it may be argued, that these contracts differ from the present in form only, and that their enforcement would lead to the same consequences. There is, however, a marked distinction between the two classes of contracts, both in regard to their validity and the practice of the Court in enforcing them. The argument ab inconvenienti, or that founded on general policy, may be all powerful to prevent the assumption of a new or a doubtful jurisdiction; when it would be wholly insufficient to destroy a jurisdiction already established by usage and authority.
With regard to that part of the case which seeks an allowance for the maintenance of the child, it is only . , , , necessary to remark that although the husband is unquestionably bound to maintain the child, as he is also to maintain his wife, and although he is liable to any per- *144 soil; except his wife, who, under the present circumstances, may furnish either of them with such articles as are necessary to subsist them in a manner suitable to their condition, he is not liable to the suit of his wife for the enforcement of this duty. The appropriate mode of securing to the child a proper support and education are provided by the statute and common law; and we see no reason for departing from it in the present case.
The decree must be affirmed.