## Muth v. Muth.

January 30, 1951.

Lawrence F. Speckman, Judge.

Vincent J. Hargadon and John L. Bennett, Jr., for appellant.

Bullitt, Dawson & Tarrant for appellee.

JUDGE HELM—Affirming.

Appellant filed this action September 24, 1947, charging cruelty and seeking a divorce from bed and board and alimony. Appellee answered and counterclaimed, seeking an absolute divorce and restoration of property. Proof was heard. The Chancellor granted appellee a divorce, dismissed appellant's petition, and denied her alimony. She appeals. He cross appeals.

The parties were married in Newark, New Jersey, in 1924. They moved to Lynchburg where they both worked. She says they worked hard and saved their money. They moved to Louisville in 1928 where he entered the optical business. When they left Lynchburg

the record shows he had $4,059.15 and she had $884.73. These amounts were transferred from a Lynchburg bank to Louisville. She says she put about $1,100 into the optical business. He denies this but does not show that she expended her savings otherwise. She worked part time in the optical store the first seven years they were in Louisville.

For a number of years before the filing of this action, appellee had made her an allowance of $45 per week, out of which she says she paid all taxes, insurance, utilities, for her clothes, a part of his clothes, and other household expenses. After the filing of the suit she requested temporary alimony. A hearing was had by Special Commissioner John Robsion, who suggested $35 per week temporary alimony for her. The Chancellor allowed her this amount.

To sustain her charge of cruel and inhuman treatment, she testified he neglected her; drank to excess; abused her and paid unusual attentions to other women. She says that in June, 1946, her husband came in about 4 o'clock in the morning, awakened her, told her he had another woman—a very beautiful woman—in whom he was interested; that she was divorced, had two children, and lived in an apartment; he told her "G— d—— you, I am fed up with you"; this humiliated and unnerved her. She says in October, 1946, she was passing along Everett Avenue about 8 p. m. when she saw her husband and a Mrs. Sexton coming down the steps of the apartment where Mrs. Sexton lived; her husband and Mrs. Sexton got in a cab and she followed them to the Blackstone Manor, a night spot near Iroquois Park; her husband did not come home until the next morning about 7 o'clock; at that time he was "very defiant and very arrogant," and told her that if she did not like the way he lived she could go back where she "came from." She and her witnesses, Faulkner and Holmes, investigators, tell of a number of occasions during June, July and August on which appellee was making love to Mrs. Sexton, and of numerous occasions on which appellee and Mrs. Sexton went to the Post and Paddock and the Blackstone Manor in Louisville. On one occasion they remained at the Post and Paddock until 2:30 a. m., then went to the Blackstone Manor and had not come out two hours later.

For appellee it is testified Mrs. Muth spent three or four months out of the year at Newark; that she did not keep house and prepare his meals for him much of the time; she kept after him all the time for money; she "forged a check of $700 of mine"; she kept nagging him all the time; she called him a s— of a b—— and other vile names on numerous occasions; she was unfriendly with his family, did not want them at her home; she was unkind to his mother; she came to the optical company, would abuse him; she insisted upon examining the books, and would call him vile names where the customers could hear. Appellee tells about the Wayne incident. A friend of appellee's came to see him, became ill while he was waiting, lay down across the bed and was on the bed when appellee returned to his home late at night. No misconduct on appellant's part was shown. Without further summarizing the evidence, clearly both parties were at fault.

Appellee purchased a home at 1932 Eastview, Louisville, for $6,750 in 1938. He says it is now worth $14,000. A number of years ago he conveyed this home to appellant. The consideration, she says, was her continuing to live with him after an "adultery charge." This is not denied. She has a 1941 model automobile for which she says she paid. He denies this, claiming that he paid for it. She has two small rings which he gave her shortly after they were married. She has a fur coat which cost $780 several years ago. She has a few shares of stocks, the exact value of which is not shown. It is not clear who paid for the stocks. She has a small amount of cash, about $275. She has the household furnishings in the Eastview home.

On his cross-appeal, appellee maintains that appellant should, because of KRS 403.060, be required to convey the Eastview property to him, "in which event he would not insist upon a return of" the automobile, jewelry, furniture, clothes, securities and cash which she now has. He maintains that she should be required to pay her attorneys' fees and costs. The Chancellor found that the present value of the property which Mrs. Muth now has is not less than $15,000. The Chancellor allowed her attorneys $750, to be paid by appellee. KRS 453.120 provides that the husband shall bear the cost of each party, unless it appears that the wife is in fault and

that she has ample estate to pay the costs. Here both parties appear to be at fault and it does not appear that she has ample estate to pay the costs. The Chancellor found that:

"These parties were married in 1924 and at the beginning of the marriage had practically no estate at all and acquired it in the early stages of their married life by diligent efforts and thrift, for which both must share the credit. * * * According to the proof, defendant was unfaithful to his marriage vows more than five years before the filing of this action and in consideration of the plaintiff forgiving him for this misconduct she received the property above mentioned. However, it appears that he did not mend his ways and the proof shows that he has been guilty of considerable misconduct with a woman other than his wife and he is not without fault in this action.

"* * * * * * * *

"It is * * * adjudged by the court that the plaintiff be, and she shall retain and have as her own all real and personal property now in her possession and owned by her, and given to her by defendant, which shall include the real property located at 1932 Eastview Avenue, Louisville, Kentucky; the 1941 Oldsmobile automobile, all jewelry, furniture, household goods, all her clothing, fur coat, all stocks and bonds, and all cash. * * *

"In view of the fact that she has secured a very liberal allowance of the property acquired during the marriage, she is not entitled to any further alimony, being not without fault."

Appellant insists that in addition to the property allowed her by the court, she is also entitled to alimony on the ground that he has a prosperous business with a substantial income, while she, at her age, is not capable of earning any substantial amount; has practically no income, and has assisted in the accumulation of the property, including the optical business. It is true that KRS 403.020 provides that a wife may not be granted a divorce for cruel and inhuman treatment unless "she is not in like fault," while it provides that the husband may have a divorce for cruel and inhuman treatment on her part without any provision as to his not being in like fault.

Appellant only asked for a divorce from bed and board. Appellant seems to rely upon our rulings in such cases as Kreidler v. Kreidler, 301 Ky. 105, 190 S. W. 2d 1012, 1013, where we said: ''The statutory provision for the allowance of alimony does not carry any restriction or condition based upon freedom from 'like fault' or any fault. The allowance is what 'the court considers equitable.' KRS 403.060,'' and Sharp v. Sharp, 302 Ky. 426, 194 S. W. 2d 835, where we held that a wife who is not wholly at fault for disruption of the marital relationship and is guilty of no moral delinquency may be entitled to alimony, though not entitled to divorce.

Under the facts and circumstances of this case, we believe the Chancellor properly allowed appellant the property referred to, and her costs, including a fee for her attorneys. A majority of the members of the Court, not including the writer, are of the opinion that the Chancellor properly disallowed appellant alimony.

The judgment is affirmed.