Brown J. SHARP, Appellant and
Cross-Appellee,

v.

Sarah R. SHARP and Foster Ockerman,
Appellees and Cross-Appellants.

Sarah R. SHARP and Foster Ockerman,
Appellants,

v.

Brown J. SHARP, Appellee (two cases).

Court of Appeals of Kentucky.

March 2, 1973.

640

Wheeler B. Boone, Lexington, for Brown J. Sharp.

Foster Ockerman, Martin, Ockerman & Brabant, Lexington, for Sarah R. Sharp and Foster Ockerman.

STEINFELD, Justice.

Sarah R. Sharp, now age 34, and Brown J. Sharp, now age 41, were married on May 24, 1957. Four children were born of this marriage. On May 19, 1971, Sarah sued for a divorce alleging cruel and inhuman treatment. She sought custody of the children, a division of the property and alimony. Brown counterclaimed for a divorce on the same grounds, and he asked for the children, for a division of the property and that alimony be disallowed. A judgment was entered on January 11, 1972, granting the divorce to Sarah and awarding her certain property and $200 per month alimony until she remarries or dies, however, the alimony payments were increased to $400 per month until Sarah " * * * receives her share of the jointly acquired property * * *." The custody of the children was awarded to Brown and he was awarded certain property, but his application for a divorce was dismissed. On March 17, 1972, an order was entered allowing $17,500 to Foster Ockerman as his fee for services to Sarah, which fee is to be paid by Brown.

Brown appealed from the judgment and subsequent order (S–86–72), naming Sarah and Ockerman as appellees. Sarah and Ockerman filed a cross-appeal (S–95–72), and they also filed a direct appeal (S–94–72) from that same judgment and order.[1]

▋ Sarah moved this court to strike and not to consider the brief which Brown filed as appellant and cross-appellee. A deposition had been taken which was not admitted in evidence and which the trial court ordered sealed. It directed that the contents of the deposition should not be used for any purpose without its permission, which was not granted. Sarah says, and it is not denied, that in two places in Brown's brief there is reference to the testimony contained in that deposition. In these circumstances we will ignore those references, but the brief will not be stricken. Another ground for striking the brief is the claim that "The statement of facts in said brief is argumentative, embellished, does not recite all of the essential facts and utterly fails to state facts or refer to evidence favorable to * * * Sarah, or detrimental to * * * Brown * * *." We consider this a frivolous assertion. This court is able to evaluate the content of briefs.

▋ Sarah also has moved to dismiss Brown's appeal from the judgment awarding an absolute divorce to her. She relies on KRS 21.060(1)(b) and our decisions that "an appeal does not lie from an award of an absolute divorce." The appeal was for the purpose of attacking Sarah's entitlement to the divorce, not to set it aside. The procedure followed is not prohibited. Lampkin v. Lampkin, Ky., 258 S.W.2d 720 (1953).

The trial court heard sixty-one witnesses —why it was so patient, we do not know. This court has been bombarded with motions by all parties, and after we had ruled we were almost always confronted with motions to reconsider. We presume that a plea to cease and desist would be as unavailing as requesting the mighty Ohio to flow upstream. Such deluge of attacks only impedes the efforts of this court to keep abreast of its business. Please, no more.

Sarah complains bitterly that the chancellor erred in awarding the children to their father instead of to her. She charges that the court was persuaded by numerous letters written to the judge by the children. The contents of these letters are unknown,

---

1. The appeals were pending before the revision of divorce laws became effective. See Chapter 182, § 26(4), Acts 1972.

and there was no opportunity for cross-examination of the children as to the letters because they were not in the record and their existence was unknown before findings of fact were entered.

Some witnesses praised Sarah as a fine wife and mother, while others took the opposite stand; and some witnesses testified similarly about Brown's qualities as a husband and father. After hearing all of that testimony, the court entered findings of fact, in part as follows:

"There were born to the parties during the marriage, four children: Lucy Sharp, age 13, Brown Sharp II, age 11, John Sharp, age 10, and Christopher Sharp, age 6. One of the most bitterly contested issues in this case is the care, custody and control of these infant children. The court finds that considerable pressure has been exerted on these children as to their wishes as to which parent they desire to live with. The court has interviewed the childern on several occasions, and it was their desire to live with their father. The court has received numerous letters from the children advising the court that they want to live with their father.

"The court finds that both the plaintiff and the defendant are fit and proper persons to have the care, custody and control of the children. The court has reviewed the factors to be considered in custody cases as outlined in Parker v. Parker, Ky., 467 S.W.2d 595, and as to these factors the parties appear to be about equal. One of the factors to be considered is the desire of the children, and the court has given the evidence on this element strong weight in making a finding as to the care, custody and control of the infant children.

"It appears to the court that there are six people involved in this litigation, one of which wants a divorce and five of which do not want the divorce to take place. The court feel that in this type situation, considering the ages of the children, that their desires should be given great weight and, therefore, the court finds that the best welfare of the children, including their happiness, would be best served by finding that the care, custody and control should be vested with the defendant father, with the plaintiff to have reasonable visitation privileges."

■. We conclude that there is no need to relate the testimony of the witnesses on the subject of fitness or unfitness of either party to have the custody of the children. Certainly there was strong evidence, unrelated to the interviews with and the letters from the children, which adequately supported the court's action. It appears that the decision as to custody was based primarily on the introduced evidence. See Anno. 99 A.L.R.2d 959. Ordinarily young children should be placed in the custody of the mother, but this is not an immutable rule. Parker v. Parker, Ky., 467 S.W.2d 595 (1971). Another rule is that unless necessity requires, the children of a family should not be separated. The overriding consideration is what is to the best interest of the children. Our view of the evidence convinces us that there are weighty reasons why Sarah should not have the children and that their best interest and welfare was to award them to their father. We will not disturb " * * * the chancellor's award of custody unless it is made to appear quite satisfactorily that there was an abuse of judicial discretion." Wacker v. Wacker, 279 Ky. 19, 129 S.W.2d 1043 (1939). We find none here.

■ We see little difference in a chancellor's, with consent of the parties as here, privately interviewing children who are embroiled in custody litigation and reading letters written by the infants. Cf. Parker v. Parker, Ky., 467 S.W.2d 595 (1971). The findings of fact show that the letters expressed the desire of the children to be with their father, which expressions were cumulative of the statements made during the interviews the court had with them.

This is not the same as considering a welfare department's report as in Wells v. Wells, Ky., 406 S.W.2d 157 (1966), or a doctor's letter and out-of-court conversation with a grandparent as in Carroll v. Carroll, Ky., 469 S.W.2d 885 (1971). We hold that the rationale of Parker v. Parker, supra, applies.

■ Brown contends that a divorce should not have been granted to Sarah. He seeks this determination in order to successfully attack Sarah's right to alimony and, if any, the amount thereof. Cawood v. Cawood, Ky., 329 S.W.2d 567 (1959); Goetz v. Goetz, Ky., 341 S.W.2d 249 (1960), and Reed v. Reed, Ky., 457 S.W.2d 4 (1970). We agree with the findings of fact and conclusions of law that the grounds for divorce " * * * are very weak in this case." Sarah charged "cruel and inhuman treatment", which the court found to have occurred. The evidence showed that Brown was guilty of accusing Sarah of infidelity, that he was constantly criticizing her in yelling tones and that this frequently occurred after the couple had retired, whereupon Brown would leave the bed and consume large amounts of liquor. On one occasion Brown left home and was absent for several days without informing his family of his whereabouts. There was also proof that on occasions he would curse Sarah and accuse her of being stupid and of being a liar. Witnesses testified that this occurred almost daily, frequently in the presence of the children. On one occasion, after a violent argument at a social event, when Sarah and Brown were on their way home with Brown driving, he took off at high speed and instead of going to their residence he went to another city where Sarah was able to get out of the car only when she suddenly pulled the key from the ignition and threw it out the window. On another occasion, witnesses said, Brown drove away, leaving Sarah standing in front of a restaurant instead of permitting her to enter the car. It was stated that in another instance he threw her down on the bed and slapped her. These accusations were denied and there was proof that Brown was a good man who tried very hard to maintain his family and provide for them. Witnesses testified to escapades of Sarah with the "Horsey Divorcee" set and of her many indiscretions, which evidence would have been a basis for the trial court's concluding that she was at fault. However, the chancellor is the fact finder and we cannot say that he was clearly erroneous in granting the divorce to Sarah. CR 52.01; Stephanski v. Stephanski, Ky., 473 S.W.2d 806 (1971).

At the time of the marriage Sarah owned a bond, which was later converted into stock, having a value of $1196. She says that part of the stock was sold to feed her horses. She also owned a small amount of personal effects. Brown owned a farm which the chancellor found to be worth $97,000 on the marriage date. It was then encumbered by a $17,000 mortgage. The chancellor also found that Brown owned farm machinery worth $7,500. Brown claims that the proof showed that he possessed a 1955 automobile, some cattle and farm inventory. The trial court concluded that Brown's net worth, when he and Sarah married, was $87,500. By the time of the filing of the divorce suit, it was found, the farm had increased in value to $170,000, but it was mortgaged for $35,900, leaving a net value of $134,100. The principal improvement had been the dredging of a pond which cost $5823.

About two years after the marriage Brown borrowed $50,000 which he invested in corporate stock. Through a series of transactions he owned a one-fourth interest in a tobacco warehouse according to his contention, or a one-half interest in that warehouse according to Sarah's contention. After considering conflicting testimony on the subject, the chancellor found that when the divorce proceedings were started Brown owned the one-fourth interest and that said interest had a value of approximately $88,000. We can ascribe no error to those findings by the trial court.

Brown was the owner and operator of an insurance business which the chancellor found to have a divorce-action value of $25,000. Additionally, at that time there were several moving vehicles, cash, household furniture, horses, jewelry, cattle and an interest in a residence, together with $3125 due Sarah and a like amount due Brown as profit on the sale of a house. However, they owed certain debts. The chancellor found the total value of the "jointly acquired property" to be $322,164, including the value of the farm when the divorce proceedings were instituted. He said that Brown was entitled to $87,500 by way of restoration, reducing the value of the remaining "jointly acquired property" to $234,664. He found that "Although the wife had not been employed to any great extent during the marriage * * * through her efforts as a housewife and mother, she has contributed approximately one-third to the acquisition of the jointly acquired property," therefore she " * * * is entitled to approximately one-third of the jointly acquired property." To compensate Sarah, he awarded her an automobile valued at $2400, a horse van valued at $1170, the horses worth $1700, the household furniture worth $3500, and a diamond ring valued at $500, leaving due Sarah " * * * by way of division of jointly acquired property the sum of $74,055," as well as $3125, which was her interest in the profit from the sale of the house.

There was conflicting testimony regarding the value of a number of the items we have discussed. We find nothing to indicate that the chancellor was clearly erroneous in his appraisal.

■ Brown sharply attacks the division of property because it included the increase in the value of the farm which he owned before marriage. He relies on Colley v. Colley, Ky., 460 S.W.2d 821 (1970), and its construction in Beggs v. Beggs, Ky., 479 S.W.2d 598 (1972). The findings of fact state, "There is some question as to whether or not the increased value of the farm is attributable to the joint efforts of the parties, but there was some evidence of improvements that have been made on the farm * * *." A finding of whether the value-increase or part thereof was due to "team efforts" or "team funds" is necessary before the restoration and division of property can be adjudged. The farm and such of the pre-marriage farm equipment which remains must be restored to Brown. KRS 403.060; Colley v. Colley, supra. The increase in value not attributable to "team effort" or "team funds" follows the property.[2] The expense of dredging the pond ($5,823.00), being for a permanent improvement, may be an investment of "team funds" and should be put into that category, if so found. The chancellor should make findings so that an adjustment, if any is indicated, can be made as to the amount of property which should be awarded to Sarah. Cf. Sandusky v. Sandusky, 166 Ky. 472, 179 S.W. 415 (1915).

■ Brown lists certain debts and claimed deductions totaling $54,427.81 which he says were not considered in allocating the property. Outstanding indebtedness, if any, which would substantially reduce the net worth should be considered.

■ Brown complains that the chancellor erred in including as jointly owned property "Interest in the Jacks Creek Road house improvements which have been unused as rent, $10,000." In his brief is a lengthy dissertation of the facts which he claims support his contention. Nowhere does he refer to the transcript of evidence, a requirement of RCA 1.210(a)(3). We will not search the thirteen volumes of testimony to find the evidence, therefore this contention is rejected. Horn v. Horn, Ky.,

2. The judgment predates the amendment to the divorce laws under Chapter 345 of the 1972 Acts. KRS 403.190(2)(e) now excludes as "marital property * * the increase in value of property acquired before the marriage to the extent that such increase did not result from the efforts of the parties during marriage."

430 S.W.2d 342 (1968); Young v. Newsome, Ky., 462 S.W.2d 908 (1971).

Brown also charges that the court erred in allowing Sarah $3125, which was one-half of the profit made on the sale of a residence on the Mason Headley Road. He says that this profit is included in the $21,250 owed to Brown by the Farmers Tobacco Warehouse, as found by the chancellor. He points out that to award Sarah one-third of the "jointly acquired property" and $3125 would be a duplication. The only response which Sarah makes is that the award of one-half of the profit to her was sustained by the evidence and "is not clearly erroneous." The argument that this amount is included in the Farmers Tobacco Warehouse debt to Brown being undenied, we hold that there was duplication which should be corrected.

Brown contests the allowance of alimony to Sarah. He cites Cawood v. Cawood, Ky., 329 S.W.2d 567 (1959), in which we said:

"Although fault on the part of the wife may not be an absolute bar to alimony, nevertheless, the relative responsibility of the parties for the breach of the marriage tie, and the degree of extent of the wife's fault, are to be considered in determing the *amount* of alimony to be awarded."

Brown points out that he has the responsibility of rearing and educating four children, that his annual net earnings are approximately $12,000, and that he is heavily in debt. He notes that Sarah is in sound physical health, has a college education and previous employment experience. When adjustments, if any, are made in distributing property, the estate which will be awarded to the respective parties may be substantially different from that which the chancellor considered at the time the judgment was entered. It would seem improper under these circumstances for us to approve or disapprove the amount of alimony awarded. Therefore, we conclude that this

matter again addresses itself to the chancellor, and we reserve any decision with respect to it. See Colley v. Colley, supra.

The court ordered taxed as costs $527.60 which was the charge of a Delaware lawyer for services in representing Sarah and his expenses when a deposition was taken in that state. Cf. Justice v. Justice, Ky., 421 S.W.2d 868 (1967). Brown objected claiming that this was an improper charge on him for the reasons that Sarah was at fault, that she has adequate estate of her own and that the deposition was the one placed under protective order and not admitted in evidence. Additionally, Brown objects to the allowance of $17,500 to Sarah's lawyer. The attorney for Sarah claims his allowance was inadequate. He had requested $23,680 and, in addition to submitting in affidavit form an itemization of the time spent and the services rendered, he supported his claim with affidavits of members of the Fayette County bar, one of which stated that a reasonable fee for such services was $20,000 and another fixed the reasonable charge at $22,500. The litigation had lasted approximately eight months. The statute governing the allowance of attorney's fees is referred to in Adams v. Adams, Ky., 412 S.W.2d 857 (1967), to-wit:

"KRS 453.120 provides that 'in actions for alimony and divorce, the husband shall pay the costs of each party, unless it appears in the action that the wife *is in fault* and has ample estate to pay the costs.' * * * Both conditions fixed by the statute must exist."

This rule has been reaffirmed in Kidd v. Kidd, Ky., 447 S.W.2d 862 (1969), and has been stated in other cases.

The two fees in excess of $18,000, if paid by the wife, would deplete a substantial part of her estate, so it cannot be said that she has "ample estate to pay the costs." Cf. McLaughlin v. McLaughlin, Ky., 405 S.W.2d 22 (1966). We agree that placing this large obligation on Brown will impose a great hardship inasmuch as he is heavily indebted, however, he is capable of

producing a large income and has substantial wealth. Brown says that in order to produce the funds to pay Sarah these items and all of the costs of which he does not now complain, he must liquidate property which will result in heavy income taxes. This may occur, but under all the circumstances we reserve the question of whether the trial court abused its discretion in taxing as costs the fee of the Delaware lawyer and in allowing Sarah's local lawyer a fee of $17,500 to be paid by Brown. An expression by us must await further action by the chancellor.

■ Among the criteria for determining the appropriate amount of attorney's fee are the time reasonably spent in representing the client and the results accomplished. We have criticized the number of witnesses used and the impositions on this and the trial court. Also, we have directed the trial court to reevaluate its decision concerning the distribution of property, which may require an adjustment of allocation of property and the allowance of alimony. Such reconsiderations and criticisms may indicate that there should be an adjustment in the fee allowed to Sarah's attorney and the taxing of costs.

■ A timely but unsuccessful motion was made by Sarah for a new trial on the claim of newly discovered evidence. Her affidavit stated that she had read a newspaper article which disclosed that the warehouse in which Brown had an interest had been sold. Responsive affidavits of several stockholders stated that "no completed sale" had been made. The trial had lasted for approximately eight months and there had been sufficient opportunity to disclose the value of all property held. In Knuckles v. Helton, Ky., 245 S.W.2d 942 (1952), we wrote:

> "It is well settled that the granting or refusing of a new trial for newly dis-

covered evidence rests largely within the discretion of the trial judge, whose judgment will not be disturbed in the absence of an abuse of discretion."

We detect no abuse in this instance.

We affirm in part and reverse in part on the appeal of Brown, CA S–86–72; affirm on the cross-appeal filed by Sarah and Ockerman, CA S–95–72; and affirm on the appeal filed by Sarah and Ockerman, CA S–94–72. Consistent with this opinion the trial court shall:

1. Make findings as to what part, if any, of the increase in value of the farm property was attributable to "team effort" or "team funds", and adjust the amount of that property to be awarded to Sarah, if an adjustment is indicated;

2. Correct the computation of the amount due Sarah by eliminating the duplication which occurred in allowing Sarah $3125, which was one-half of the profit made on the sale of the Mason Headley Road residence, with the $21,250 owed Brown by the Farmers Tobacco Warehouse;

3. Reconsider the alimony allowance and make an adjustment, if that seems appropriate; and

4. Reconsider the award made to Sarah's attorney and make an adjustment, if that seems appropriate.

PALMORE, C. J., and MILLIKEN, OSBORNE, STEPHENSON and STEINFELD, JJ., sitting.

All concur.

NEIKIRK and REED, JJ., did not sit in the consideration or participate in the decision of this case on the merits.