### Bean v. Bean.

(Decided May 21, 1915.)

#### Appeal from Ohio Circuit Court.

1. Divorce—Property Rights in Action For.—In adjusting the property rights between a husband and wife in a divorce action it is inequitable to restore to the husband property conveyed to the wife which was paid for out of the joint property of the husband and wife where it appears that the wife still has custody of infant children which she must rear and support when it was the duty of the husband to do so, and particularly when it appears that the property was conveyed to the wife by her brothers for a nominal consideration and that the husband years before confirmed her title thereto.

2. Husband and Wife—Use of Wife's Property by Husband—Improvements.—Where the husband has had the use of the wife's property and the value thereof was greater than the improvements placed thereon by him he is entitled to no compensation for the improvements.

3. Divorce—Conveyance to Wife in Fraud of Creditors.—A husband who caused to be conveyed to his wife the title to property paid for by him, with the purpose of defrauding his creditors is not entitled to have the same restored to him in a judgment for divorce.

ERNEST WOODWARD and N. L. HEAVRIN for appellant.

BARNES & SMITH for appellee.

OPINION OF THE COURT BY JUDGE TURNER—Reversing on the original appeal and affirming on the cross-appeal.

Appellant and appellee were married in 1881, the wife at the time being eighteen years of age and the husband a middle aged man of about forty. He had been previously married and had two children by that marriage.

This is an action for divorce and alimony by the wife, the ground for divorce being five years' separation without co-habitation; the husband filed an answer and counterclaim denying the wife's grounds for divorce, and himself asserted as grounds for divorce abandonment for more than one year; and in addition thereto asserting that during the marriage relation he had bought and paid for a three-fifths interest in a farm, which had been conveyed to his wife, and a house and lot in Beaver Dam, which had also been conveyed to her, and which property she had received by reason of the marriage relation between them, and asked that the court restore the same to him; he also alleged that he had placed valuable and lasting improvements to the extent of several hundred dollars upon her property.

In the reply it was denied that the three-fifths undivided interest in the farm had been paid for by him, or that the house and lot in Beaver Dam had been paid for by him, or that he had placed any valuable improvements upon her land.

The evidence disclosed at the time of their marriage the husband had no property whatsoever except some little personal property of small value, and that at the time he was considerably in debt and involved in litigation. The wife, however, had a one-fifth undivided interest in a farm of about 357 acres which she and her three brothers and a sister had inherited from their father. In the spring of 1882 she and her husband moved upon this farm, and through the generosity of her brothers and sister no rent was charged them therefor.

Seven children were born to them, three of whom at the time this suit was instituted were less than twenty-one years of age.

In 1897, the parties being anxious to give their children better educational advantages than might be had in the neighborhood, a house and lot at Beaver Dam

was purchased and the mother and children moved there while the father remained upon the farm. However, about 1899 they went back to the farm and lived there almost a year when the wife and children again went to Beaver Dam to live, where they have ever since resided except for a temporary residence at Bowling Green to enable the children to receive additional educational advantages.

During the first few years of their residence at Beaver Dam, which was only a few miles from the farm, the husband and father visited them some several times a year and contributed to their support to some extent from the products of the farm. He kept a bank account at Beaver Dam and directed the cashier to honor his wife's checks. Gradually, however, in some way which is not explained in the record, the parties seemed to grow apart, and there was an unaccountable estrangement between the father and his wife and children, although he continued up to within about a year before this action was instituted to furnish them with provisions and in some measure contribute to their support.

But two of appellant's brothers and her sister very generously aided her to the extent of thousands of dollars during these years in contributing to the support of herself and children and the education of the latter. It is apparent from the record but for this assistance the children could not have received the educational advantages which they have received, and their support during those years would have been meager.

Since the spring of 1882, when the husband and wife moved upon this tract of 357 acres of land, the husband has continuously, up to this time, had possession and control of the whole farm and has paid not a dollar of rent to anybody, and the evidence is that the Beaver Dam house and lot was chiefly paid for by the proceeds of some timber which came from this farm.

In 1883 one of the wife's brothers conveyed to her his one-fifth undivided interest in the farm for the recited consideration of love and affection, although the pleadings seem to admit that he received a consideration of $250. In 1889 the two other brothers conveyed their undivided two-fifths interest in the farm to her for the consideration of $500. It is the contention of the husband that he paid out of his own means this $750 to the three brothers, while it is contended by the wife

that the payments therefor were made from the proceeds of the land; and in addition thereto she pleads that at the time of these conveyances to her he was largely in debt and caused the same to be made to her for the purpose of defrauding his creditors and to evade the payment of his debts. The evidence is that at the time of the conveyances by the three brothers to their sister their several interests in this farm were worth considerably more than the consideration which they received, and they testify that the consideration was only intended to be nominal, and that it was in truth and fact in the nature of a gift to their sister to aid her in rearing and supporting her children.

The evidence shows that the rental value of the land during the thirty odd years that appellee has occupied it was from $150 to $200 per year.

The chancellor below entered a judgment granting the appellee the divorce on his counterclaim, declining to adjudge appellant any alimony, adjudged appellee to be the owner of the two-fifths interest in the land conveyed appellant by the two brothers in 1889, and refusing to grant him any relief as to the other one-fifth interest therein conveyed to her in 1883 or any interest in the Beaver Dam property. From so much of that judgment as adjudges him the two-fifths interest in the farm and as fails to adjudge her alimony, this appeal is prosecuted, and the appellee prosecutes a cross-appeal from so much of the judgment as denies to him the one-fifth interest conveyed to his wife in 1883 or any interest in the house and lot at Beaver Dam.

So much of the record as bears upon the grounds for divorce will not be considered by this court on appeal except in so far as it sheds light upon the property rights of the parties; and as the appellee is now an old man past seventy years of age, and the record shows that he has only a few hundred dollars of personal property and a pension of seventeen dollars per month to insure him the comforts of life in his few remaining years, the question of alimony need not further be considered.

Appellee had no property when he moved upon this farm, and it is perfectly apparent that inasmuch as he has at all times since lived on it, he could have accumulated nothing which did not come from the farm itself combined with his own efforts. It was his legal and moral duty to support his wife and children and to edu-

cate the latter, and even with the free use of this farm he has not discharged that duty.

But even if it had been shown that he had paid the $500 for the two-fifths interest conveyed to his wife in 1889, it would be inequitable to restore it to him when the record discloses that his wife still has the custody of at least two of his infant children whom she must rear and support, when it is his duty to do so. Not only so, but the record discloses that in 1893, after he claims to have been out of debt, he joined his wife in a conveyance of her four-fifths interest in the land to her brother, and that it was thereafter reconveyed by the brother to appellant according to the terms of a previous agreement. The wife in the meantime had been adjudged a *feme sole,* and it is apparent this was all done with his assent, for the purpose of confirming her title.

The evidence satisfactorily shows that the value of the use of this farm during all of these years has been much greater than appellee's combined claims growing out of improvements and anything he may have paid on the consideration of the Beaver Dam property, and the chancellor properly declined to allow either item. Nall v. Miller, 95 Ky., 448; Carpenter v. Hazelrigg, 103 Ky., 538.

The evidence shows that at the time of the conveyance in 1883 by appellant's brother of a one-fifth interest in the farm, that appellee was heavily in debt and requested that the conveyance be made to his wife so that it might not be subjected to the payment of his debts, and he is not therefore entitled, under the provisions of Section 425 of the Civil Code, to a restoration of this property which he caused to be conveyed to his wife for the purpose of defrauding his creditors.

The fact that his debts were thereafter paid and that the conveyance to the wife did not have the effect to defraud his creditors does not change the rule of law that one who fraudulently conveys his property to another with the intention of defrauding his creditors cannot recover it; it is the fraudulent *intention* upon his part and the moral turpitude involved which places him in position where the chancellor will deny him relief. Coleman v. Coleman, 147 Ky., 383.

The judgment seems to be proper in all respects except in so far as it directs appellant to convey to appellee the two-fifths interest in the tract of land; and

for that reason the judgment is reversed on the original appeal with directions to enter a judgment conforming to the views herein expressed; in all other respects the judgment is affirmed.