## Justice v. Justice.

April 19, 1949.

Francis Burke for appellant.

Abner May for appellee.

OPINION OF THE COURT BY JUDGE KNIGHT—Affirming.

Appellant and appellee were married on January

25, 1923, and were divorced by judgment entered in the Circuit Court of Wayne County, Michigan, on April 28, 1947. During the time they were married, to wit, on March 25, 1924, appellant purchased and took title in his name to a lot or tract of land at McAndrews on Pond Creek in Pike County for which he paid $600. Later, improvements consisting of a four room house and some outbuildings were erected on this property, the cost of which improvements are not shown in the record. On November 16, 1936, appellant, joined by his then wife, appellee, conveyed this property to her mother, Launa May, who shortly thereafter, on January 16, 1937, conveyed the property to her daughter, Rosella Justice, appellee herein. This latter deed was not recorded until September 23, 1941. The recited consideration in each of the latter deeds was $500. Shortly after the divorce above referred to was granted, appellant filed this suit praying that the property be restored to him pursuant to the provisions of Sec. 425 of the Civil Code of Practice. He alleges that all the consideration for the land and the improvements thereon was paid by him and no part thereof was paid by appellee; that there was no real consideration paid by Launa May when the property was deeded to her and no consideration paid by appellee when her mother deeded the property to her, and that the title to said land was vested in appellee by the above deeds during marriage and by reason thereof.

In her answer and counterclaim appellee denies the allegations of the petition. By way of counterclaim she says that she labored and took care of the house and the children and helped appellant provide the money for purchase of the land and to erect the improvements thereon; that the conveyance of the property to her mother and then to her was made in good faith and for a valuable consideration and that appellant was present when said deeds were executed, and acquiesced in having the deed made to his then wife, appellee herein. She prays that she be adjudged owner of the land and her title therein quieted. A reply made up the issues.

### Appellant's Proof.

Appellant's proof to sustain his pleading was in substance that he paid all the $600 purchase price for the land and for the improvements which were erected thereon shortly after its purchase; that his wife, ap-

pellee, paid no part of the cost of the land or the improvements; that the value of these improvements at the time he testified was between $4000 and $4500; that he has continued to live in this property since the separation of appellant and appellee in 1943, appellee having lived in Detroit since that time; that no consideration passed either in the deed to Mrs. Launa May or in the deed from her to appellee, but that all deeds were made in order that the wife might have title to the property and for security.

Mrs. Launa May, mother of appellee, testified that she paid no consideration when the deed was made to her nor was any paid when she deeded the property to her daughter and that she, the witness, never had possession of the property but that it was occupied by appellant and his wife, and appellant has continued to occupy it since the separation and does now; that appellant gave no reason at the time why he was deeding the property to her.

Appellee, only witness for herself, testified in substance that when the property was put in her name her husband was not in debt but she said that he had some trouble with another girl before he was married to appellee and this woman, named Ethel Coleman, was threatening bastardy proceedings against him, claiming he was the father of her child. This was in 1925. She also brought in the name of another woman called Dona who lived in West Virginia and who, she says, wrote threatening letters to appellant. This was about 1932 or 1933. She admitted that she did not put any money into the original purchase of the lot or in the building of the original improvements but said she paid for or helped pay for some of the additions that were later added, such as the bathroom which cost about $500, finishing the upstairs and adding another room which cost between $300 and $400; said she borrowed money from her father and mother, as much as $150 at one time. She also testified about work she had done in keeping the house, sewing and helping appellant with a restaurant which he operated at one time. She testified that before deeding the property to her mother appellant told her he was afraid one of the women with whom he had had trouble was going to "law" him and take his property.

In rebuttal appellant testified that he never knew

or heard of any woman named Dona and no such person had ever threatened him with any litigation but did not deny the trouble with the Coleman woman; that he paid for the bathroom and other improvements which had been added to the house, and that his wife paid no part of it. He also introduced in rebuttal the men who built the additions and installed the bathroom, all of whom testified that they were employed and paid by appellant Harvey Justice.

From a reading of all the testimony of which the above is a resume of the highlights, we think it is fairly established that the property and most of the improvements thereon were paid for by appellant. The appellee may have furnished some money, possibly to the extent of about $500 in some of the later improvements on the property, and perhaps contributed incidental help by her assistance to him in his business, thus allowing him to spend some of his earnings on the improvements. If there were no other testimony except that relating to their respective contributions to the purchase and improvement of the property, we would have little difficulty in deciding that appellant is entitled to restoration of the property, giving appellee a lien thereon for such money as she may have put into the property. However, from all the evidence in the case, the majority of the court is convinced that the property was not acquired by appellee in consideration of the marriage and by reason thereof, but that on the contrary it was deeded to appellant's mother-in-law who later deeded it to his wife because of his fear that suits might be brought against him by one or the other of the women who were making threats against him. It has long been a rule of equity in divorce actions that notwithstanding the statutory provisions requiring that the propery rights of the parties upon the granting of a divorce should be restored, such restoration could not and would not be enforced if the party had, during the marriage relation, conveyed the property to his or her husband or wife for fraudulent or immoral purposes. Bean v. Bean, 164 Ky. 810, 176 S.W. 181; Honaker v. Honaker, 182 Ky. 38, 206 S.W. 12; Jagoe v. Jagoe, 194 Ky. 101, 238 S.W. 185, 187. As was said in the case of Jagoe v. Jagoe, supra:

"Under the evidence in this case it is reasonably clear—and the chancellor below has so held—that the

defendant in order to avoid his liability on a warranty of the jack had, during the marriage relation, conveyed his property to his wife; and it is the policy of the law that where one for unlawful or immoral purposes has placed the title to his property in another, the courts will not at his instance or suggestion relieve him from the situation in which he has placed himself by reason of his immoral or unlawful purpose.. The evidence in this case justifies the conclusion that defendant placed the title to this property in his wife for the purpose of avoiding a liability on his warranty, and he now comes into court, and asks a chancellor to restore to him the title to the property which he thus voluntarily parted with for an immoral and unconscionable purpose.

"To permit the courts to thus be made tools for the perpetration of such frauds would bring into disrepute the whole administration of justice. They are not constructed for the purpose of aiding unconscionable persons to consummate the frauds which they may concoct; on the contrary it is the rule that courts will not permit themselves to be made the instruments by which such fraudulent schemes are carried out."

The Chancellor, after hearing all the evidence and perhaps with a knowledge of the parties involved, decided that the facts brought out by the evidence did not justify a restoration of the property, and we are of the opinion that there was sufficient evidence to justify his conclusion.

The judgment is therefore affirmed.