**Delmus TAYLOR, Appellant,**

**v.**

**Anita TAYLOR, Appellee.**

Court of Appeals of Kentucky.

March 18, 1966.

Fritz Krueger, Somerset, for appellant.

Cabell Francis, Stanford, for appellee.

PALMORE, Judge.

Delmus and Anita Taylor, the parties to this divorce proceeding, were married in 1932. In February of 1957 the wife was awarded a divorce from bed and board. KRS 403.050. Taylor brought this action in November of 1962 seeking an absolute divorce on the ground of five years' separation. KRS 403.020(1) (b). He was granted a divorce, but the judgment denied restoration of a small 25-acre farm he had conveyed the wife in 1953. Cf. KRS 403.-060(2).

The only issue raised on appeal is whether the evidence was sufficient to justify the chancellor's finding that "plaintiff husband thought he was about to or might have a judgment creditor and he chose to prefer his estranged wife to some feared possible plaintiff as the owner of his land. The deed was not given in consideration of the marriage, but was given in an effort to make himself execution proof."

Six children were born to the marriage, of whom five survive. At the time the judgment in this case was entered three of them had reached maturity and the other two, 7 and 19 years of age, were still living with their mother. Taylor was directed to pay $15 per week for the support of these two children. Alimony was neither asked nor allowed. The wife has had exclusive and uninterrupted possession of the 25-acre farm ever since she and Taylor separated. At last account, she and the two younger children were living in a modest home on the farm.

At the time the conveyance was made, in 1953, the parties had separated over Taylor's attentions to another married woman and were living apart. She says a rumor got out that the other woman's husband was about to sue Taylor for $5,000, whereupon Taylor volunteered to and did make the

deed, without any solicitation on her part. She testified as follows:

A— "He called up there and the daughter answered the telephone and he said, 'Tell your mother—' "

KRUEGER: "Objection."

A— " 'Tell your mother to come down tomorrow and I'll deed her the farm'."

Q— "Did he say why?"

A— "I didn't ask him to deed it to me and I didn't ask him why."

Q— "Did he make any statement as to why he deeded you the farm?"

A— "No, he didn't say why I'm giving it to you, he just said to come down and he deeded it to me, and so I come and he deeded it; I didn't ask a question."

Joan McLockland, a married daughter of the Taylors, gave this account:

Q— "Can you tell the Court the circumstances under which your father made a deed to your mother for the home place in Broughentown."

A— "Yes, he called the store one day, and I answered and I asked him and told him that people were asking if he wasn't going to be sued by Joe Kausen, so the next day he called mother and come to Stanford and gave her the place."

Q— "Now, was that the consideration that he gave the place for?"

A— "Yes, the only thing, I mean, he didn't give it to her until he knew that."

Taylor's testimony on this phase of the case was as follows:

On direction examination:

Q— "Why did you deed it to her?"

A— "I deeded to to her—she asked me to, and I deeded it to her."

Q— "She paid you nothing for it?"

A— "No."

Q— "You deeded it to her purely because she was your wife?"

A— "Yes."

And on cross-examination:

Q— "Delmus how'd you happen to put that farm in your wife's name?"

A— "She asked me to and I did."

Q— "Wasn't the woman about to sue you?"

A— "No, sir."

Q— "Wasn't Clausen [sic] about to sue you, because his wife had a child?"

A— "No, sir; No, sir."

Q— "Didn't your daughter come there and ask you to put it in their name so they wouldn't lose the place?"

A— "No, if she did, I don't remember it."

Q— "You don't know whether you got a child by another woman, or not, then?"

A— "No, I don't."

Q— "Did you say you did have?"

KRUEGER: "Objection!"

A— "Nobody didn't tell me I had."

Q— "Nobody told you you had, huh? Did your wife accuse you of it?"

A— "I think so."

KRUEGER: "Objection!"

Q— "That's what you got the other Separation Agreement over, wasn't it?"

A— "Something like that."

Q— "Something like that! And that's when you put the deed in your wife's name, wasn't it?"

A— "Yes."

It is true, as Taylor contends, that in most of the instances in which it has been held that the facts justified or required non-restoration on the ground of a fraudulent or immoral purpose the court has found the evidence of such motivation to be at least "reasonably clear." See Lankford v. Lankford, Ky., 117 S.W. 962 (1909); Coleman v. Coleman, 147 Ky. 383, 144 S.W. 1, 39 L.R.A.,N.S., 193 (1912); Bean v. Bean, 164 Ky. 810, 176 S.W. 181 (1915); Honaker v. Honaker, 182 Ky. 38, 206 S.W. 12 (1918); Jagoe v. Jagoe, 194 Ky. 101, 238 S.W. 185 (1921); and Justice v. Justice, 310 Ky. 34, 219 S.W.2d 964 (1949). However, it does not seem to us that the proof in *Justice,* the latest of these cases, was much more impressive than it is in this one. There the conveyance was made in 1936 and the parties were divorced in 1947. In the words of the opinion (emphasis added), the wife testified that when the conveyance was made "her husband was not in debt but *she said* that he had some trouble with another girl before he was married * * * and this woman, named Ethel Coleman, was threatening bastardy proceedings against him, claiming he was the father of her child. *This was in 1925.* She also brought in the name of another woman called Dona who lived in West Virginia and who, she says, wrote threatening letters to appellant. *This was about 1932 or 1933.* * * * In rebuttal appellant testified that he never knew or heard of any woman named Dona and no such person had ever threatened him with any litigation but did not deny the trouble with the Coleman woman," etc.

In a written opinion delivered after consideration of the evidence in the instant proceeding the trial court commented, "In viewing all of the testimony the court finds it difficult to believe that the plaintiff husband, at a time when his relationship with his wife had become such that they could no longer occupy the same dwelling together, would return from Chicago and deed her the farm because he wanted her to have it. It is more plausible to believe that plaintiff feared that he was going to be sued and chose to execute the deed to defeat any

judgment that might be had against him." To make a long story short, we do not find that conclusion clearly erroneous. CR 52.-01.

The judgment is affirmed.