RENDERED: APRIL 5, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0012-MR

MORGAN GILBERT                                                          APPELLANT

v.     APPEAL FROM FAYETTE CIRCUIT COURT
       HONORABLE KATHY W. STEIN, JUDGE
       ACTION NO. 18-CI-02993

JOHN GILBERT                                                            APPELLEE

AND

NO. 2022-CA-0450-MR

JOHN WEBSTER GILBERT                                          CROSS-APPELLANT

v.     CROSS-APPEAL FROM FAYETTE CIRCUIT COURT
       HONORABLE KATHY W. STEIN, JUDGE
       ACTION NO. 18-CI-02993

MORGAN ELIZABETH GILBERT                                  CROSS-APPELLEE

** ** ** ** **

BEFORE: EASTON, JONES, AND LAMBERT, JUDGES.

LAMBERT, JUDGE: These appeals arise from the Fayette Circuit Court's orders disposing of marital property and denying further hearings on maintenance and visitation. After careful review of the briefs, record, and law, we affirm both appeals.

## BACKGROUND FACTS AND PROCEDURAL HISTORY

Morgan and John Webster Gilbert were married on December 29, 2013, and their daughter was born in June 2014. Morgan filed the underlying dissolution action in August 2018, and a status quo order requiring John to continue to pay her credit card during the pendency of the proceedings was entered.

The final hearing was held in February 2019. Therein, Morgan stipulated to John retaining sole custody of their daughter and, contingent on her compliance with the ordered drug testing, agreed to one-hour of visitation a week supervised by GreenHouse 17. Additionally, Morgan expressly made no claim for permanent maintenance. The primary issue submitted to the court was the disposition of the marital residence. The parties agreed that John owned the

property prior to their marriage and that, shortly thereafter, he deeded it to Morgan. Morgan testified John gifted the property to her. Disputing this, John explained that, because he was in "a high-risk specialty and sometimes neurosurgeons get sued beyond malpractice limits and lose everything," for "asset protection" he conveyed the title to Morgan with the understanding that she would return it if they separated.

Prior to entry of a final order, litigation continued, and several motions were filed regarding Morgan's timesharing with her daughter and the amount of "maintenance"[1] she received from John. The last of these motions came before the court during an October 2020 motion hour. After hearing arguments, the court suspended Morgan's timesharing and reduced John's financial obligation. The court memorialized these oral rulings in its findings of facts, conclusions of law, and decree of dissolution entered on December 30, 2020. Also in that order, the court rejected Morgan's claim that the house was a gift and awarded it to John as his nonmarital property. Morgan sought to alter, amend, or vacate the order, arguing that the court had erred in awarding John the residence, had failed to address several property matters, and had denied her a meaningful opportunity to be heard on the issues of timesharing and maintenance.

---

[1] As we will discuss in more detail later, the parties routinely reference Morgan's maintenance award, but no such order was ever entered. Prior to the final judgment, the only order setting temporary support was the status quo order entered October 2, 2018.

On March 24, 2021, the court granted Morgan's request for an additional hearing on timesharing and maintenance and amended the final judgment to award her the residence. The court explained that, given John's credible testimony he deeded Morgan the residence to prevent its forfeiture to a potential judgment creditor, it was persuaded that its prior property order was contrary to the former Court of Appeals' holding in *Justice v. Justice*, 310 Ky. 34, 219 S.W.2d 964 (1949), that courts of justice should never enforce a contract made for fraudulent purposes. John then filed his own motion to alter, amend, or vacate the amended order.

On April 8, 2022, the court reversed its determination that further hearings on visitation and maintenance were required and, stating that it had reviewed the testimony anew, reaffirmed its award of the house to Morgan "as gifted by" John. These appeals followed. We will introduce additional facts as they become relevant to the individual claims raised.

**STANDARD OF REVIEW**

On appeal, "due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." *Barber v. Bradley*, 505 S.W.3d 749, 754 (Ky. 2016) (quoting Kentucky Rule of Civil Procedure (CR) 52.01). If the court's findings of fact "are supported by substantial evidence, then the appellate court's role is confined to determining whether those facts support the

trial judge's legal conclusion.  However, while deferential to the lower court's

factual findings, appellate review of legal determinations and conclusions from a

bench trial is *de novo*."  *Id.* (internal quotation marks and citations omitted).

**ANALYSIS**

Disposition of the marital residence:

We begin with John's claim that the court erred in its disposition of

the marital residence.  Two alternative grounds support the court's decision to

award Morgan the property, as a gift or, even accepting John's claim that his intent

was asset protection, as a matter of equity per *Justice*.  We begin our analysis with

the latter.

John argues that the court misinterpreted *Justice* in that, if the court

concluded the transfer was fraudulent, the remedy was to set the conveyance aside.

Alternatively, he contends a "more current and appropriate" statement of the law is

found in *Digenis v. Young*, No. 2014-CA-001086-MR, 2017 WL 3328119 (Ky.

App. Aug. 4, 2017) (unpublished), wherein the "appellate court relied on [the]

*Restatement (Second) of Trusts* § 442 (1959)[.]"  Lastly, John states that this case

is distinguishable from *Justice*.  As we conclude that John's claims are not

supported by the authorities on which he relies, we disagree.

In *Justice*, the husband brought an action to be restored title to

property he purchased while married that had been transferred to the wife solely in

her name prior to their eventual divorce. 219 S.W.2d at 964. The wife averred that, at the time of the conveyance, the husband was being threatened with a civil suit, and the husband did not deny the allegation. *Id.* at 965. Affirming the judgment quieting title in her favor, the Court explained, "notwithstanding the statutory provisions requiring that the property rights of the parties upon the granting of a divorce should be restored, such restoration could not and would not be enforced if the party had, during the marriage relation, conveyed the property to [their spouse] for fraudulent or immoral purposes." *Id.* at 965-66. Thus, the holding of *Justice* is directly contrary to the remedy espoused by John, and the court did not misinterpret the law.

Further, we disagree with John that the holding in *Digenis* offers any respite since his claim that the Court therein relied on Section 442 of the RESTATEMENT (SECOND) OF TRUSTS is not supported by a plain reading of the case. The husband in *Digenis*, like John, testified repeatedly that he had titled nonmarital property acquired during the marriage in his spouse's name as a means of asset protection. 2017 WL 3328119, at *6. In footnote 10, the sole reference to the Restatement, the Court commented that the husband's argument for the restoration of the property accorded therewith. *Id.* at *6. However, in its analysis, the Court expressly rejected the husband's position as contrary to Kentucky law and, citing *Justice*, the Court affirmed the circuit court's refusal to award him the disputed

-6-

property. *Id.* at *6-7. The Court explained, "[a] person who conveys property . . . to avoid the reach of creditors is generally at his grantee's mercy as to whether he will ever get his property back; the 'clean hands' maxim bars either party to the conveyance from obtaining affirmative judicial relief to enforce the arrangement." *Id* at *7. Ergo, the court did not err in refusing to apply the Restatement.

Finally, John contends that the facts of this case are distinguishable from *Justice* because he does not presently have an outstanding creditor. Again, this argument is not supported by the case law. In *Justice* the Court stated, "from all the evidence in the case, the majority of the court is convinced that the property was [deeded to the] wife because of [the husband's] fear that suits might be brought against him by one or the other of the women who [] were making threats against him." 219 S.W.2d at 965. There is no indication that the husband was actually sued; hence, John's claim of distinction is without merit. Accordingly, we find no error, and we need not consider the court's alternative conclusion that Morgan established that the property was a gift.[2]

---

[2] Even if we were inclined to review whether the residence was gifted to Morgan, a fact-intensive inquiry, John's brief contains wholly insufficient citations to the record to support reversal. A litigant is required to provide "ample references to the specific location in the record supporting each of the statements" made in their statement of the case and "pertinent to each issue" in the argument section of their brief. Kentucky Rule of Appellate Procedure (RAP) 32(A)(3)-(4). Here, John included only sparse citations in his statement of the case, and those references that are provided to the video record are not formatted properly as they fail to identify the date of the proceeding referenced and make no attempt to provide a pinpoint citation. RAP 31(E)(4). Additionally, the citations routinely do not support the facts asserted. As we have often noted, "[i]t is not the job of the appellate courts to scour the record in support of an

<u>Disposition of other assets</u>:

Turning to Morgan's appeal, she first argues that the court failed to comply with its obligation to classify and divide all of the parties' assets, specifically, that the court did not make findings of fact as to the funds in the parties' savings and retirement accounts, any real estate holdings beyond the residence, or regarding EW, LLC, a business owned by John. John argues that there is no real matter in controversy since Morgan never disputed that these were his nonmarital assets. We are inclined to agree with John.

Morgan is correct that, ordinarily, to comply with the mandate of Kentucky Revised Statute (KRS) 403.190, the court in a dissolution action is required to engage in a three-step process regarding property disposition: (1) characterize each item of property as marital or nonmarital, (2) assign each party their respective nonmarital property, (3) equitably divide marital property. *Gripshover v. Gripshover*, 246 S.W.3d 460, 465 (Ky. 2008). However, KRS 403.190 expressly pertains to property acquired during the marriage.[3] Here, John

---

appellant or cross-appellant's arguments." *Dennis v. Fulkerson*, 343 S.W.3d 633, 637 (Ky. App. 2011) (citing *Smith v. Smith*, 235 S.W.3d 1, 5 (Ky. App. 2006) and *Phelps v. Louisville Water Co.*, 103 S.W.3d 46, 53 (Ky. 2003)).

[3] KRS 403.190 provides, in relevant part:

> (2) For the purpose of this chapter, "marital property" means all property acquired by either spouse subsequent to the marriage except:

testified and provided supporting evidence that these assets were his premarital property. Prior to her post-judgment motion, Morgan did not request that the court take any action regarding the disputed properties. Moreover, she offered no proof sustaining a conclusion that she had any interest therein, as recognized by KRS 403.190, beyond a vague assertion that she believed that John's accounts had accumulated value during the marriage. Consequently, we are unconvinced that the court failed in its statutory obligation.

Visitation:

As an initial matter, Morgan takes umbrage with the sheer length of time that elapsed from the final hearing, held February 20, 2019, to the entry of the

---

(a) Property acquired by gift, bequest, devise, or descent during the marriage and the income derived therefrom unless there are significant activities of either spouse which contributed to the increase in value of said property and the income earned therefrom;

(b) Property acquired in exchange for property acquired before the marriage or in exchange for property acquired by gift, bequest, devise, or descent;

(c) Property acquired by a spouse after a decree of legal separation;

(d) Property excluded by valid agreement of the parties; and

(e) The increase in value of property acquired before the marriage to the extent that such increase did not result from the efforts of the parties during marriage.

(3) All property acquired by either spouse after the marriage . . . is presumed to be marital property[.]

December 30, 2020, order suspending visitation.  She argues that the court's reliance on such outdated information cannot constitute substantial evidence.  Thus, she reasons, the court committed clear error.  Morgan's argument, however, is disingenuous.  Absent a brief period when she sought to expand visitation before affirmatively abandoning the claim, Morgan expressly agreed to the visitation terms.[4]  Accordingly, there was no need for a hearing on the issue prior to October 2020, when John sought to terminate visitation.

Next, Morgan claims that her due process rights were violated when she did not receive a meaningful opportunity to be heard at the October proceedings.  John disagrees, noting that Morgan had ten days' notice of the hearing, she filed a written response, she was present and represented by counsel at the hearing, and she was specifically afforded an opportunity to respond to the court.  We agree with John.

"Due process requires, at the minimum, that each party be given a meaningful opportunity to be heard."  *Lynch v. Lynch*, 737 S.W.2d 184, 186 (Ky.

---

[4] Although the pleadings repeatedly reference that Morgan was ordered to have supervised visitation at GreenHouse 17, the record on appeal is devoid of any visitation order prior to December 30, 2020.  However, from the factual and procedural history detailed therein, it appears that the initial visitation order, which pursuant to KRS 403.740(1)(e)2. was required to utilize the same the statutory criteria governing such decisions in dissolutions, was entered in the parties' concurrent domestic violence action, over which Judge Stein also presided.  We reiterate that the maxim "one family, one court" does not extend to court records, and the onus to ensure that this Court has a full and complete record is on the appealing parties.  *See S.R. v. J.N.*, 307 S.W.3d 631, 637-38 (Ky. App. 2010).

App. 1987). "[A] party has a meaningful opportunity to be heard where the trial court allows each party to present evidence and give sworn testimony before making a decision." *Holt v. Holt*, 458 S.W.3d 806, 813 (Ky. App. 2015) (citing *Wright v. Wright*, 181 S.W.3d 49, 53 (Ky. App. 2005)).

In his motion, John argued that visitation should be terminated due to Morgan's noncompliance with court orders to drug screen and to undergo a mental health examination as well as her disruptive behavior that resulted in her being released from GreenHouse 17's supervised visitation program. In her response, Morgan largely admitted to the factual allegations,[5] but she argued that her visitation should be permitted to continue at a new facility and requested a hearing. The matter came before the court at its motion hour, during which the parties, through counsel, reiterated their respective arguments. The court expressed concern about Morgan's behavior and asked Morgan if she had any response, to which she replied, "no response." Thereafter the court suspended her visitation.

While neither party provided sworn testimony nor properly introduced evidence, Morgan, through counsel, conceded to the factual basis supporting John's motion. Morgan had notice of the specific allegations, and, through

---

[5] Counsel explained that Morgan believed that her obligation to drug test had ended, but she acknowledged that an order had not been entered. Additionally, counsel disputed that Morgan was required to provide the results of the ordered mental health examination, arguing it was only required if she wanted unsupervised visitation.

-11-

counsel, vigorously argued for continued visitation both in her written response and before the court. While the motion was heard at the court's motion hour, Morgan does not allege that she was precluded from calling witnesses or introducing evidence. In fact, Morgan declined to testify and expressly refused to comment on the proceedings when questioned by the court. Under these facts, we cannot say that Morgan was denied an opportunity to be heard; she merely failed to utilize it.

Next, Morgan argues that the court committed reversible error when it restricted her visitation without first making a specific finding "that visitation would endanger seriously the child's physical, mental, moral, or emotional health[,]" as required by KRS 403.320(3).[6] We agree that the court's findings are technically deficient; however, we conclude that the issue is not preserved.

In *Anderson v. Johnson*, 350 S.W.3d 453 (Ky. 2011), the Supreme Court of Kentucky examined the interplay between the trial court's obligation to

---

[6] In its December 30, 2020, order, the court stated, "Morgan's threats to the safety of [GreenHouse 17 employees] and her refusal to obtain and provide the court ordered psychological/social assessment place her daughter in danger whether visitation is supervised or not. Morgan's temporary timesharing is suspended out of concern for the child's safety." The discrepancy between the statutory language and the court's finding is arguably minor. But, though we do not wish to promote form over substance, given the fundamental right a parent has to her child, strict conformance is required when at no point in the proceedings – from John's motion, Morgan's response, the arguments before the court, or the order – was the applicable standard (that visitation would seriously endanger the child's physical, mental, moral, or emotional health pursuant to KRS 403.320(3)) identified.

render findings of fact per CR 52.01[7] and a litigant's responsibility under CR 52.04[8] to request additional findings in order to preserve their right to appeal. The Court held that, if the trial court makes a good faith effort at fact finding but omits a finding on an issue essential to the judgment, reversal or remand is barred if the litigant failed to make a written request to remedy the oversight. *Id.* at 458.

Here the court made detailed, relevant findings, demonstrating a good faith attempt to comply with its fact-finding obligation. Accordingly, if the serious endangerment of the child is an issue essential to the judgment, Morgan was required to seek an additional finding to preserve the matter for our review. Because the total suspension of visitation is unquestionably a restriction that, by the plain language of KRS 403.320(3), requires a finding of serious endangerment to the child, we conclude the issue is essential. Consequently, Morgan's failure to request an additional finding in her post-judgment motion precludes relief.

---

[7] CR 52.01 states, "[i]n all actions tried upon the facts without a jury[,] the court shall find the facts specifically and state separately its conclusions of law thereon and render an appropriate judgment[.] Requests for findings are not necessary for purposes of review except as provided in Rule 52.04."

[8] CR 52.04 states:

> A final judgment shall not be reversed or remanded because of the failure of the trial court to make a finding of fact on an issue essential to the judgment unless such failure is brought to the attention of the trial court by a written request for a finding on that issue or by a motion pursuant to Rule 52.02.

<u>Maintenance</u>:

Finally, Morgan asserts that the court erred in reducing her maintenance without providing her a meaningful opportunity to be heard. We find no merit in this argument as the issue is mooted by the entry of the final order.

While the parties and the court below referred to John's support obligation as maintenance, the court did not enter a temporary maintenance order. The court only ordered John to continue paying Morgan's credit card balance as part of its status quo order. When Morgan specifically sought temporary maintenance, the court orally denied her request, although it never entered an order memorializing the oral ruling. And at the final hearing on February 20, 2019, Morgan, through counsel, stated multiple times that she was not seeking maintenance. Regardless, John's obligation under the status quo order terminated upon entry of the final order. KRS 403.160(6)(c). Thus, there was no longer a need for the court to hold a hearing on the issue.

**CONCLUSION**

For the foregoing reasons, the orders of the Fayette Circuit Court are affirmed.

ALL CONCUR.

BRIEFS FOR APPELLANT/
CROSS-APPELLEE:

W. Steven Middleton
Frankfort, Kentucky

BRIEF FOR APPELLEE/
CROSS-APPELLANT:

Martha A. Rosenberg
Lexington, Kentucky